**Julia A. NICODEMUS, Plaintiff-Appellee,**

v.

**CHRYSLER CORPORATION,
Defendant-Appellant.**

**No. 77–3026.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 10, 1978.

Decided April 6, 1979.

Thomas L. Dalrymple, Richard S. Baker, Fuller, Henry, Hodge & Snyder, Toledo, Ohio, for defendant-appellant.

Robert J. Affeldt, Sylvania, Ohio, for plaintiff-appellee.

Before CELEBREZZE and KEITH, Circuit Judges, and LAWRENCE, Senior District Judge.[*]

KEITH, Circuit Judge.

This case involves an appeal by Chrysler Corporation ("Chrysler") from the district court's grant of a preliminary injunction requiring it to reinstate plaintiff-appellee in employment status with back pay and to pay attorney's fees and expenses incurred by plaintiff-appellee in prosecuting the preliminary injunction action. The jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1292(a)(1).[1]

The record reveals that on July 2, 1973, plaintiff-appellee, Julia A. Nicodemus,[2] brought a class action suit against Chrysler for sex discrimination in employment practices. After the conclusion of the first segment of a bifurcated trial at which evidence upon the liability issue was presented, the district court, in an opinion filed April 5, 1976, found Chrysler liable for sex discrimination in violation of Title VII[3] and continued the case for trial of the issues relating to relief. On August 6, 1976, during the interim between the liability and the relief segments of the trial, plaintiff-appellee was discharged by Chrysler. Three days after termination of her employment, on August 9, 1976, plaintiff-appellee's union filed a written grievance in her behalf. Four days later, on August 13, 1976, plaintiff-appellee filed a motion for a temporary restraining order and a motion for preliminary injunction, each alleging that her termination was in retaliation against her because of her status as the class representative in the sex discrimination action. On the date of its filing, plaintiff-appellee's motion for a tem-

[*] The Honorable Alexander A. Lawrence, Senior Judge, United States District Court for the Southern District of Georgia, sitting by designation.

1. 28 U.S.C. § 1292 provides in pertinent part:
   "§ 1292. Interlocutory decisions.
   (a) The courts of appeals shall have jurisdiction of appeals from: (1) Interlocutory orders of the district courts of the United States . . . or of the judges thereof, granting, continuing, modifying, refusing, or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court."

2. At the time of the instant action plaintiff-appellee had, by marriage, become Julia A. Bourn rather than Julia A. Nicodemus.

3. See 42 U.S.C.A. §§ 2000e et seq.

porary restraining order was denied [4] on the grounds that the termination would not result in irreparable harm and that plaintiff-appellee had an adequate remedy at law.

A hearing for the presentation of evidence on plaintiff-appellee's motion for a preliminary injunction was held on September 16, 1976.[5] Chrysler argued at this hearing that plaintiff-appellee had been dismissed for absenteeism pursuant to a nationally established company policy which authorized disciplinary action for any employee absent five (5) consecutive days without adequate substantiation that he or she could not have worked.[6] Plaintiff-appellee countered with evidence that she had been absent from work because of personal problems in the nature of marital difficulties and that she had consulted with and been excused from work by her doctor. The crux of her contention at the hearing and on this appeal is that Chrysler used its purportedly established national policy as a pretext to retaliate against her for participating in the sex discrimination lawsuit.

The district court agreed with plaintiff-appellee that Chrysler's contention that she had been discharged pursuant to an established employment policy was a pretext. Instead, the court found, in a Memorandum and Order dated September 17, 1976, that she was discharged "in retaliation for her having maintained a successful class action law suit attacking sex discrimination in employment practices." The court also found that plaintiff-appellee would suffer irreparable harm if the court did not issue the injunction. As a result of these findings, the district court ordered Chrysler to immediately reinstate plaintiff-appellee to the employment status she held on August 2, 1976, the last day she reported for work,[7] and to pay her all backpay accruing from this date to the date she was reinstated. The district court further ordered Chrysler to pay plaintiff-appellee's counsel the sum of $1,000.00 to cover attorney's fees and expenses incurred in prosecuting the preliminary injunction action.

On September 20, 1976, Chrysler filed a notice of appeal from the district court's

4. The motion for a temporary restraining order was presented to and denied by a judge other than the one regularly assigned to this case.

5. This motion was presented to and decided by District Judge Don J. Young, the district judge regularly assigned to this case.

6. The policy which Chrysler claims to have relied upon in effecting the discharge is contained in the company's collective bargaining agreement, which provides in part:

"Agreement between Chrysler Corporation and the UAW
September 21, 1973
Production and Maintenance
*　*　*　*　*　*
"*(49) Loss of Seniority*
"An employee shall lose his seniority for the following reasons only:
*　*　*　*　*　*
"(c)—He is absent for five (5) days without notifying the plant in accordance with its procedure established pursuant to Sec. (95) of the Agreement. In proper cases, exceptions will be made. After such absence management will send written notification to the employee at his last known address that he has lost his seniority. Such notice will include the name of the person he is to contact at the plant in the event he has evidence to establish a claim that he did in fact notify the

plant of his absence or evidence that his is a proper case in which an exception should be made. Such notice will also advise him of his right to union representation, at his request, while he is in the employment office. If the disposition made of any such case is not satisfactory, the matter may be referred to Step 2 of the grievance procedure.
*　*　*　*　*　*
"(d)—If he does not return to work when called. In proper cases, exceptions will be made. If the disposition made of any such case is not satisfactory, the matter may be referred to Step 2 of the grievance procedure."

While it remains somewhat unclear which subsection quoted above is the alleged basis for plaintiff-appellee's discharge, all parties appear to agree that "loss of seniority" within the meaning of the above-quoted subsections means that the employee is no longer with the company.

7. While plaintiff-appellee did not actually report for her 10:30 evening shift on August 2, 1976, it appears that she called the plant earlier in the day to make arrangements to return that evening pursuant to a release from her doctor but was told that she would have to be seen first by the company doctor which, at the earliest, would be the next day.

Memorandum and Order entered on September 17, 1976. On September 21, 1976, Chrysler also filed a motion pursuant to Rule 62(c), F.R.C.P., for suspension of the injunction during pendency of the appeal. On September 23, 1976, the district court entered an order overruling Chrysler's motion to stay the injunction. Thereupon, on October 8, 1976, Chrysler filed a notice of appeal from the district court's order overruling its motion to stay the injunction and from the judgment of the same date granting plaintiff-appellee's motion for preliminary injunction, reinstatement, back pay, and attorney's fees and expenses. We now reverse the judgment of the district court.

The standard for appellate review of the granting or denial of a preliminary injunction has been succinctly stated by the First Circuit:

"In reviewing the granting of or denial of a preliminary injunction, the standard is whether the district court abused its discretion. An appellate court's role is to decide whether the district court applied proper legal standards and whether there was reasonable support for its evaluation of factual questions."

*Hochstadt v. Worcester Foundation*, 545 F.2d 222, 229 (1st Cir. 1976). *See also, Meccano, Ltd. v. John Wanamaker*, 253 U.S. 136, 141, 40 S.Ct. 463, 64 L.Ed. 822 (1970); *King v. Saddleback Junior College District*, 425 F.2d 426, 427 (9th Cir. 1970), *cert. denied*, 404 U.S. 979, 92 S.Ct. 342, 30 L.Ed.2d 294 (1971); *Sellers v. Regents of the University of California*, 432 F.2d 493, 497 (9th Cir. 1970), *cert. denied*, 401 U.S. 981, 91 S.Ct. 1194, 28 L.Ed.2d 333 (1971); *Jerome v.*

*Viviano Food Co.*, 489 F.2d 965, (5th Cir. 1974). And while Chrysler strongly contends that the injunction should be set aside on the merits, we do not reach this question.

The aspect of the case most disturbing to the Court, and which we believe requires that we reverse, is the conduct of the district judge during the preliminary injunction hearing. Unfortunately, we cannot say as Judge Edwards did in *Brown v. Ralston Purina*, 557 F.2d 570 (6th Cir. 1977), that "[t]he hearings were conducted fairly and courteously by the District Judge." 557 F.2d at 573. In making an oral ruling from the bench on plaintiff-appellee's preliminary injunction motion, the district judge stated:

"This thing is the most transparent and the most blatant attempt to intimidate witnesses and parties that I have seen in a long time. I don't believe anything that anybody from Chrysler tells me because there is nothing in the record that is before me and in my experience in dealing with this case that gives me reason to believe that they are worthy of credence by anybody. They are a bunch of villains and they are interested only in feathering their own nests at the expense of everybody they can, including their own employees, and I don't intend to put up with it."

The Court is of the view that these remarks were both unsupported by the record and unnecessary in the circumstances.[8] Although it is contended that the district judge's conduct constituted "mere righteous indignation prompted by the heinous activity he had witnessed," this Court is of the

8. In support of its contention that the district court denied it a fair hearing, Chrysler also contends, with several references to the record which we need not recite, that from beginning to end, the hearing was characterized by repeated instances of insistence upon haste, abusive questioning of a witness by the court, disregard of relevant evidence, and discouragement of argument by counsel. The court is aware that any record can be so closely scrutinized as to reveal things with which we are likely to find fault and that "[w]e must guard

against the magnification on appeal of instances which were of little importance in their setting." *United States v. Frazier*, 584 F.2d 790, 794 (6th Cir. 1978). Were the above-cited instances of alleged judicial overbearing the only thing before us, a review of the record might well convince us that the district judge was simply running a tight ship. But when the above-cited instances are considered in conjunction with the district court's vilification of appellant the scales are tipped perceptively in

view that he overstepped.[9] "Whether unconsciously or otherwise, he failed from the start of the [hearing] to view this case with the impartiality between litigants that [appellant was] entitled to receive." *Knapp v. Kinsey*, 232 F.2d 458, 467 (6th Cir. 1956), *cert. denied* 352 U.S. 892, 77 S.Ct. 131, 1 L.Ed.2d 86 (1956). See also, *United States v. Hickman*, 592 F.2d 931, Nos. 78–5148/9 (6th Cir. decided and filed February 15, 1979); *United States v. Cruz*, 455 F.2d 184, 185–86 (2d Cir. 1972), *cert. denied*, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972); *Nordmann v. National Hotel Co.*, 425 F.2d 1103, 1109 (5th Cir. 1970); *Posey v. United States*, 416 F.2d 545, 555 (5th Cir. 1969), *cert. denied*, 397 U.S. 946, 90 S.Ct. 966, 25 L.Ed.2d 127 (1970).

As the Eighth Circuit observed in *Reserve Mining Co. v. Lord*, 529 F.2d 181 (8th Cir. 1976):

"A judge best serves the administration of justice by remaining detached from the conflict between the parties. As Justice McKenna stated long ago, '[T]ribunals of the country shall not only be impartial in the controversies submitted to them but shall give assurance that they are impartial . . . .' *Berger v. United States*, 255 U.S. 22, 35–36, 41 S.Ct. 230, 235, 65 L.Ed. 481 (1921). When the judge joins sides, the public as well as the litigants become overawed, frightened and confused."

529 F.2d at 186.

While the Court is aware that self-restraint and the preservation of an atmosphere of impartiality is not always easy, it is equally cognizant of the mandated result when the bounds of propriety are overstepped.

"Often some degree of bias develops inevitably during a trial. Judges cannot be forbidden to feel sympathy or aversion for one party or the other. Mild expressions of feeling are as hard to avoid as the feeling itself. But a right to be tried

by a judge who is reasonably free from bias is a part of the fundamental right to a fair trial. If, before a case is over, a judge's bias appears to have become overpowering, we think it disqualifies him. It follows that the judgment must be reversed."

*Whitaker v. McLean*, 73 App.D.C. 259, 118 F.2d 596 (1941). *See also, Johnson v. Mississippi*, 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971); *Knapp, supra; Reserve Mining Co. v. Lord, supra; United States v. Frazier*, 584 F.2d 790 (6th Cir. 1978).

Equally troublesome for the Court is the fact that the remarks of the district judge went beyond suggesting bias at the hearing on September 16th. His statements also place in doubt his ability to conduct unbiased future proceedings in regard to this matter. In continuing his oral ruling from the bench, the court stated:

"I find that this was a deliberate and calculated attempt to inflict damage on the plaintiff in a case which is not yet finally determined. That makes it even more difficult for me because I still have some of this case to determine.

"If ever there was a time that the company should have withheld its hand, this is it. They make it very difficult for me, but I shall do my best. If I have to resolve the remaining matters in this case after hearing, I shall do my best not to allow myself to be swayed by the episodes that have been brought before me today, although there is no particular reason why under the law I should."

And in granting relief, the Court stated:

"I am going to order that the plaintiff be reinstated, that she be given back pay from the second day of August, and that she and her counsel are awarded the sum of $1,000 to cover attorney fees and expenses in prosecuting this action. I award that not necessarily because the employment laws provide it but because I

---

favor of reversal because of a denial of a fair hearing to one of the parties.

**9.** The Court notes that this is not our first encounter with intemperate judicial language

by this particular district judge. See *Joseph Skillken & Co. v. City of Toledo*, 528 F.2d 867 (6th Cir. 1975).

believe that the evidence throughout this case and what I have heard here today just emphasize that this company is deliberately and calculatedly trying to defy the Court and to hurt the other parties, and that they are doing it willfully and that they are doing it obstinately and they are doing it when they know they have no legal right to do it. These things were done without even consulting their attorneys, and anybody who acts when he is represented by counsel without consulting its attorneys the Court can only presume that he does it in defiance of the law, and I so presume and I so find, specifically."

Thus, this Court is confronted with a situation similar to that in *Lord, supra,* where the court stated:

"Ordinarily, when unfair judicial procedures result in a denial of due process, this court could simply find error, reverse and remand the matter. Recusal would be altogether inappropriate. However, the record in this case demonstrates more serious problems. The denial of fair procedures here was due not to good faith mistakes of judgment or misapplication of the proper rules of law by the district court. The record demonstrates overt acts by the district judge reflecting great bias against Reserve Mining Company and substantial disregard for the mandate of this Court."

529 F.2d at 185.

While ordinarily this Court would simply find error, reverse and remand upon finding that unfair judicial procedures have resulted in a denial of due process, the Court is of the view that this case requires that more drastic measures be taken. The district court's statements suggest that it cannot guarantee its impartiality in future proceedings in this matter. Although the parties have not so requested, either in their

briefs or upon oral argument, the Court is of the view that curative action should be taken *sua sponte.*[10]

It is, therefore, ordered that the judgment of the district court be reversed and the case remanded for a hearing on plaintiff-appellee's preliminary injunction motion before a different judge.

---

10. The Court is not in a position to determine whether or not Judge Young could in fact conduct future proceedings in this case in an unbiased fashion; nor do we presume that he could not. However, we are firmly of the view that he should disqualify himself pursuant to 28 U.S.C.A. § 455(a), which provides:

"(a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

See also, *Reserve Mining Co. v. Lord,* 529 F.2d 181 (8th Cir. 1976).