815 F.2d 391
 55 USLW 2613, 7 Fed.R.Serv.3d 529
 INVST FINANCIAL GROUP, INC., a Michigan Corporation,
Plaintiff-Appellee,
v.
CHEM-NUCLEAR SYSTEMS, INC., a Washington Corporation,
Defendant-Appellant.
In re C. William GARRATT, and Garratt & Morris, P.C.,
Petitioners-Appellants.
 Nos. 85-1731, 85-1888.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 29, 1986.
Decided March 31, 1987.
Rehearing Denied June 10, 1987.
 
 1
 Jonathan T. Walton, Jr. (argued) Clark, Klein & Beaumont, Detroit, Mich., Fred W. Batten, for Chem-Nuclear Systems, Inc.
 
 
 2
 Mark E. Reizen, Bushnell, Gage, Doctoroff & Reizen, Southfield, Mich., John K. Parker (argued), for INVST Financial Group, Inc.
 
 
 3
 C. William Garratt, Garratt & Morris, P.C., Bloomfield Hills, Mich., pro se.
 
 
 4
 Ramsey Clark, New York City, for C. William Garratt and Garratt & Morris, P.C.
 
 
 5
 Before KEITH and WELLFORD, Circuit Judges, and TODD, District Judge.*
 
 
 6
 TODD, District Judge.
 
 
 7
 This is a consolidation of two cases which arose out of a common set of facts. In INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc., defendant Chem-Nuclear appeals the district court's entry of a default judgment due to the failure of Chem-Nuclear's former attorney to file an answer in a timely manner. In re C. William Garratt and Garratt and Morris, P.C. is an appeal of the imposition of sanctions upon Garratt pursuant to Fed.R.Civ.P. 11. For the reasons hereinafter stated, we REVERSE the default judgment in INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc. We AFFIRM in part and REVERSE in part the imposition of sanctions in In re C. William Garratt and Garratt and Morris, P.C.
 
 I. FACTS
 
 8
 INVST Financial Group, Inc. (INVST) was a Michigan corporation engaged in the business of identifying corporate acquisition candidates. In 1981, INVST contracted with defendant Chem-Nuclear Systems, Inc. (Chem-Nuclear), agreeing to attempt to locate possible candidates for acquisition by Chem-Nuclear. A written agreement between the parties defined their relationship and described the circumstances under which INVST would be entitled to a fee.
 
 
 9
 INVST located a company named Hanchar as a potential acquisition prospect for Chem-Nuclear. A Chem-Nuclear subsidiary entered a two-year option and operating agreement to purchase all the stock of two subsidiaries of Hanchar. Chem-Nuclear's subsidiary operated Hanchar's subsidiaries for four months before deciding, for various reasons, not to exercise the option to purchase the Hanchar stock. After the option and operating agreement were terminated, INVST demanded compensation for its role in the Hanchar transaction. Chem-Nuclear refused to pay, claiming that no acquisition had taken place to trigger the agreement to pay a finder's fee.
 
 
 10
 INVST filed a diversity jurisdiction breach of contract suit against Chem-Nuclear on June 7, 1983. On August 10, 1983, plaintiff's counsel, Mark Reizen (Reizen), granted attorney William Garratt (Garratt) an indefinite extension of time for Chem-Nuclear to answer the complaint.
 
 
 11
 On September 7, 1983, Reizen sent Garratt a letter seeking a status report. Garratt did not respond. Discovery began in September 1983, even though no answer had been filed on behalf of defendant. District Judge Gilmore held a status conference in November 1983, at which he set certain deadlines, including a motion cutoff date of December 1, 1984, and an anticipated trial date of January 1985. At the status conference, neither the lawyers nor Judge Gilmore referred to Chem-Nuclear's failure to file an answer. During the conference Garratt advised that defendant Chem-Nuclear was a Washington corporation, and Judge Gilmore instructed INVST to amend its complaint to insure complete diversity. On November 17, 1983, INVST filed an amended complaint, reflecting that Chem-Nuclear was a Washington corporation.
 
 
 12
 As the suit progressed, discovery problems arose. On June 25, 1984, Reizen sent a letter to Garratt which contained the following:
 
 
 13
 [p]laintiff's First Set of Interrogatories were forwarded to you on February 29, 1984, and I still have not received Answers to the same. Those Answers are now long overdue, and a Motion to Compel Answers to these Interrogatories will be filed with the Court on July 2, 1984.
 
 
 14
 Discovery in this matter on behalf of your client has been dilatory at best, and it appears that I will no longer be able to accommodate you with requests for extensions of time with regard to any matter on this file. From this point onward, I expect timely responses to all pleadings filed in this matter and I will not hesitate to seek the Court's protection from this point onward.
 
 
 15
 On October 2, 1984, three months after the letter from Reizen, Garratt filed an answer for Chem-Nuclear, including affirmative defenses and a counterclaim. At that same time, Garratt responded to INVST's first set of interrogatories.
 
 
 16
 INVST had not sought entry of default between its June 1984 letter purportedly revoking the time extensions and defendant's October 1984 pleading. From June until October, the only contact between the parties was an additional discovery dispute in July.
 
 
 17
 On October 19, 1984, INVST moved to strike Chem-Nuclear's answer, counterclaim, and affirmative defenses. Chem-Nuclear responded to the motion to strike by contending that INVST's counsel had expressly agreed to grant additional time to respond; that INVST's counsel never requested a response to the pleadings; that INVST had never objected or sought any relief regarding the alleged untimeliness of the response until after it was filed; and that failure to object to the untimeliness of the response constituted a waiver or estoppel.
 
 
 18
 On November 15, 1984, at a hearing on pending motions, Garratt explained that he had not answered the complaint in a timely fashion because he had relied upon the agreement made with plaintiff's counsel. Garratt indicated that he interpreted the June 25, 1984, letter to be confined to discovery matters, and that he did not consider it to be a revocation of the extension of time granted to file an answer. Garratt also argued that plaintiff had not been prejudiced by any delay in filing an answer because discovery had proceeded and plaintiff had not sought any judicial relief as a result of the untimely answer. INVST argued that it had been prejudiced by the delay because the filing of a counterclaim and affirmative defenses so close to the discovery cutoff made adequate discovery impossible prior to a January trial date. Judge Gilmore granted INVST's motion to strike the answer and counterclaim, although the order to strike was not entered until November 30, 1984, and was not filed by the clerk until December 3, 1984.
 
 
 19
 Chem-Nuclear filed two motions before the order to strike was entered. On November 20, 1984, Chem-Nuclear filed a motion to dismiss for insufficiency of service of process on the basis that Chem-Nuclear had ceased to exist in 1982 and was therefore not amenable to suit. On November 29, 1984, Chem-Nuclear moved for summary judgment on the basis that defendant had no obligation to plaintiff, because no acquisition which would trigger the finder's fee provision of the agreement had ever occurred.
 
 
 20
 INVST moved for entry of default and default judgment on December 5, 1984. INVST also responded to Chem-Nuclear's motions to dismiss and for summary judgment, contending that the motions were "frivolous and vexatious" and were filed in bad faith. INVST sought an award of costs and fees pursuant to Fed.R.Civ.P. 11 for the alleged vexatious, harassing, and frivolous motions. On January 17, 1985, before arguments began on pending motions, a representative of Garratt's law firm made an oral motion for Judge Gilmore's recusal. Because no affidavit was presented in support of that motion, the motion for recusal was summarily denied. At the conclusion of arguments on the pending motions, the court granted plaintiff's motion for default judgment. Judge Gilmore denied Chem-Nuclear's motion to dismiss for insufficiency of service of process because it had been waived under Fed.R.Civ.P. 12(a)(1). The court described the defense of insufficiency of service of process as "outrageous" because Garratt had initially filed an answer and counterclaim on behalf of Chem-Nuclear, and only after those pleadings had been stricken did he take the position that Chem-Nuclear did not exist.
 
 
 21
 The court also denied, without consideration, defendant's motion for summary judgment. The court reasoned that because defendant's answer had been stricken, its motion for summary judgment should not be entertained. Rule 11 sanctions were imposed for both the motion for summary judgment and the motion to dismiss.
 
 
 22
 A hearing on damages for the default judgment was set for January 24, 1985, and a hearing on the Rule 11 sanctions was set for January 31, 1985. On the date set for a hearing on damages for the default judgment, Chem-Nuclear filed two motions opposing the court's entry of a default judgment. Chem-Nuclear argued that a default judgment was inappropriate because: 1) any attorney neglect was excusable; 2) it had stated meritorious defenses to plaintiff's claims; and 3) the facts had been misrepresented to obtain a default judgment.
 
 
 23
 Also on January 24, 1985, Garratt presented a lengthy written motion for recusal of Judge Gilmore. In the motion, Garratt questioned Judge Gilmore's impartiality, setting forth a history of Judge Gilmore's alleged "bias" in cases in which a party was represented by Garratt's firm.[1] The recusal motion was assigned to Honorable Robert E. DeMascio for disposition, and on February 21, 1985, Judge DeMascio denied the motion to recuse Judge Gilmore, stating:
 
 
 24
 [i]nitially, we note that, under [28 U.S.C.] Sec. 144, actions of a judge in pending or previous litigation in which the movant has been involved are not grounds for disqualification. Personal bias based upon extrajudicial actions must be shown. Southerland v. Irons, 628 F.2d 978 (6th Cir.1980).
 
 
 25
 It is clear to this court that defendant is claiming no personal bias on the part of Judge Horace Gilmore. Defendant's allegations of bias all concern judicial actions taken by the presiding judge in the present and past cases in which defendant's counsel has appeared. This is an insufficient basis for disqualification.
 
 
 26
 Additionally, we have reviewed the procedural history of this lawsuit. We are of the opinion that, in bringing this motion, defendant is compounding a demonstration of lack of good faith in the defense of this action. While we believe that this motion presents an appropriate basis for the imposition of sanctions under Fed.R.Civ.P. 11, such action is more appropriately left to the assigned judge.
 
 
 27
 On January 25, 1985, INVST filed a petition for payment of costs and attorney fees pursuant to Fed.R.Civ.P. 11.[2]
 
 
 28
 Garratt continued to file supplemental briefs and motions seeking reconsideration of the entry of default judgment until his law firm was replaced as counsel for Chem-Nuclear on April 3, 1985. Judge Gilmore refused to set aside the default judgment. On April 18, 1985, Judge Gilmore ruled that sanctions should be imposed personally upon Garratt for filing the motion to dismiss, the summary judgment motion, and the motion for recusal.
 
 
 29
 The district court then referred the matter to a magistrate, pursuant to Fed.R.Civ.P. 53, to determine the appropriate amount of fees or sanctions to assess against Garratt. The magistrate held two days of hearings at which Garratt's counsel actively participated. The magistrate recommended sanctions of $14,238.75, based upon the time spent by INVST's attorney in opposing Chem-Nuclear's motions to dismiss, for summary judgment, and for recusal of Judge Gilmore. Garratt contested the award, contending it was improper to award sanctions purely on the basis of actual time spent responding to the underlying motions, without establishing that the time expended was reasonable and necessary.
 
 
 30
 Over Garratt's objection, the district court adopted the report and recommendation of the magistrate and ordered Garratt to pay $14,167.50. A motion for reconsideration failed, and this appeal was filed.
 
 
 31
 On April 3, 1985, Chem-Nuclear's new counsel moved for reconsideration of the entry of default judgment, which motion was summarily denied. On April 18 and May 1, 1985, hearings were held to ascertain the amount of damages to be awarded INVST because of the default judgment. The court concluded that INVST had sustained $82,000 as damages on the claim for finder's fees and this appeal was filed.
 
 II. DEFAULT JUDGMENT
 
 32
 Chem-Nuclear contends that the district court erred in refusing to set aside the default judgment despite defendant's meritorious defenses and the lack of any prejudice to plaintiff in the trial of such defenses.
 
 
 33
 The mechanism by which an entry of default judgment may be set aside is found in Fed.R.Civ.P. 55(c):
 
 
 34
 [f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).
 
 
 35
 Fed.R.Civ.P. 60(b) provides grounds for setting aside a default judgment:
 
 
 36
 (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.
 
 
 37
 This Court recently considered the standard of review in cases involving entry of default or entry of default judgments. In Shepard Claims Service, Inc. v. William Darrah & Associates, 796 F.2d 190, 193 (6th Cir.1986), this court said:
 
 
 38
 Rule 55(c) leaves to the discretion of the trial judge the decision whether to set aside an entry of default. However, a strong preference for trials on the merits in federal courts has led to the adoption of a somewhat modified standard of review where defaults are involved. In United Coin we wrote:
 
 
 39
 Trials on the merits are favored in federal courts and a "glaring abuse" of discretion is not required for reversal of a court's refusal to relieve a party of the harsh sanction of default.
 
 
 40
 705 F.2d at 846 (citing Keegel, 627 F.2d at 373-74).
 
 
 41
 In Shepard Claims Service, this court noted the distinction between the Rule 55(c) standard for default and the Rule 60(b) standard for default judgments announced in Jackson v. Beech, 636 F.2d 831, 835 (D.C.Cir.1980): "[a] default can be set aside under Rule 55(c) for 'good cause shown,' but a default that has become final as a judgment can be set aside only under the stricter Rule 60(b) standards for setting aside final, appealable orders." Because this case involves a default judgment, we are bound by the stricter Rule 60(b) standards in determining whether to set aside the judgment.
 
 
 42
 In United Coin Meter Co. v. Seaboard Coastal Line R.R., 705 F.2d 839 (6th Cir.1983), this court described the three factors which determine the outcome of a motion to vacate a default judgment: " [w]hether the plaintiff will be prejudiced; [w]hether the defendant has a meritorious defense; and [w]hether culpable conduct of the defendant led to the default." Id. at 845. See also Livingston Powdered Metal, Inc. v. NLRB, 669 F.2d 133, 136 (3d Cir.1982). Because the court "should ... construe[ ] all ambiguous or disputed facts in the light most favorable to the defendant[ ]," any doubt should be resolved in favor of the defendant. Jackson, 636 F.2d at 838.
 
 
 43
 In the instant appeal, review of the district court's denial of the motion to set aside the default judgment has been made difficult because the trial court failed to give any reason for refusing to set aside the judgment. Several courts have noted that a district court's failure to explain the standards used in refusing to vacate the default judgment is itself error requiring a remand. See, e.g., Davis v. Musler, 713 F.2d 907, 913 (2d Cir.1983); Farnese v. Bagnasco, 687 F.2d 761, 765-66 (3d Cir.1982); see also Keegel v. Key West & Caribbean Trading Co., 627 F.2d 372, 374 (D.C.Cir.1980) (error not to indicate standard in order, but record provided sufficient basis for appellate review); Medunic v. Lederer, 533 F.2d 891, 893 (3d Cir.1976) (error to fail to state standard but court of appeals able to make determination from record).
 
 
 44
 Initially, we must determine whether plaintiff will be prejudiced if the default judgment is vacated. At the hearing on the motion for default judgment, INVST claimed that it would suffer prejudice if forced to pursue the claim on the merits because defendant filed its answer only one month prior to discovery cutoff and only a few months prior to trial. Obviously, if the default judgment is set aside some delay will necessarily result because plaintiff would be entitled to discovery and preparation time. However, "delay alone is not a sufficient basis for establishing prejudice." Davis, 713 F.2d at 916; see, e.g., United Coin, 705 F.2d at 845; Keegel, 627 F.2d at 374. "Rather, it must be shown that delay will 'result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.' " Davis, 713 F.2d at 916; quoting 10 C. Wright, A. Miller and M. Kane, Federal Practice and Procedure, Sec. 2699 at 536-37 (1983).
 
 
 45
 Plaintiff has failed to establish that any prejudice from the delay would occur, because plaintiff has not shown that discovery would be more difficult or that evidence would be lost. Cf. Quaker Valley School District v. Employers Mutual Liability Insurance Company of Wisconsin, 96 F.R.D. 423, 424 (W.D.Penn.1983) (financial costs and delay insufficient to establish prejudice). Accordingly, we hold that INVST has not shown prejudice within the meaning of the United Coin inquiry.
 
 
 46
 Next we must consider whether Chem-Nuclear has set forth a meritorious defense. The trial court did not consider the merits of the defenses raised in defendant's answer or motion for summary judgment, and we must therefore evaluate the merits of Chem-Nuclear's proposed defenses de novo.
 
 
 47
 "In determining whether a defaulted defendant has a meritorious defense "[l]ikelihood of success is not the measure'.... [r]ather, if any defense relied upon states a defense good at law, then a meritorious defense has been advanced." United Coin, 705 F.2d at 845, quoting Keegel, 627 F.2d at 374 (emphasis added). The Keegel court also added that such a defense is sufficient if it contains " 'even a hint of a suggestion' which, proven at trial, would constitute a complete defense." 627 F.2d at 374. The key consideration is "to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." 10 C. Wright, A. Miller, M. Kane, supra, Sec. 2697 at 531.
 
 
 48
 Defendant submits two defenses which must be tested for adequacy under United Coin, supra. First, Chem-Nuclear contends that no acquisition ever took place to trigger the finder's fee agreement. Second, Chem-Nuclear contests the method used by the court to calculate the commission or finder's fee. We note that there is no unambiguous formula for calculation of the commission in the terms of the agreement. Therefore, either of defendant's contentions, if proven, constitutes a defense to this action. Chem-Nuclear sufficiently sets forth adequate defenses for purposes of satisfying the meritorious defense inquiry of United Coin.
 
 
 49
 Finally, the culpability of defendant's conduct must be examined. In Shepard Claims, this court stated: "[t]o be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." 796 F.2d at 194. That panel declined to attempt a precise definition of "culpable conduct," but stated, "[w]here the party in default satisfies the first two requirements for relief and moves promptly to set aside the default before a judgment is entered, the district court should grant the motion if the party offers a credible explanation for the delay that does not exhibit disregard for the judicial proceedings." Id., 796 F.2d at 195. In this case, the district court found the sixteen month delay before filing an answer and defendant's failure to seek an extension of time under Fed.R.Civ.P. 6 "inexcusable." The district court did not, however, discuss the nature of defendant's conduct and did not characterize it as exhibiting disregard for the judicial proceeding. We must therefore review the record to decide whether the conduct of Chem-Nuclear's counsel was culpable and led to the default.
 
 
 50
 It was not the failure to file an answer which created discovery problems. Nor did the absence of a filed answer delay the status conference, at which no one mentioned the answer or the absence thereof. The delay in filing an answer did not affect the trial date. In fact, it appears that both parties acted as if the answer had been filed or was not needed.
 
 
 51
 Although Chem-Nuclear did not answer for sixteen months, by granting an indefinite extension of time INVST clearly acquiesced in the delay for some twelve months. Because the parties clearly had an agreement affording Garratt at least a twelve month extension and, arguably an unlimited extension of time in which to file an answer, the length of the delay is not as egregious as it appears.
 
 
 52
 The delay resulted, in part, from a misunderstanding of the terms of a letter purporting to revoke extensions of time. Because of discovery disputes during the first year of the litigation, INVST's attorney Reizen mailed a letter to Garratt on June 25, 1984, which said "from this point onward, I expect timely responses to all pleadings filed in this matter...." Garratt later explained that he understood the letter, which was written in the context of a discovery dispute, to be a revocation of time extensions in discovery matters only and not as a revocation of the agreement indefinitely extending time to file an answer. Reizen contends, and the trial court found, that the letter was a revocation of all extensions of time.
 
 
 53
 Some three months after that letter, Garratt filed an answer for Chem-Nuclear, including a counterclaim and affirmative defenses. INVST promptly moved to strike the answer and Chem-Nuclear responded quickly to the motion to strike. At this point, when it became obvious that the parties were no longer operating under any agreements concerning extensions of time, Chem-Nuclear became prompt and prolific in filing motions and pleadings. It is significant, despite Reizen's contention that his June 25, 1984, letter to Garratt revoked all extensions of time, that Reizen took no action to seek a default until after Chem-Nuclear had answered. See, e.g., Securities and Exchange Commission v. Vogel, 49 F.R.D. 297, 300 (S.D.N.Y.1969).
 
 
 54
 Because the purported revocation letter was written in the context of a discovery dispute, was ambiguous on its face, did not set any deadline for Chem-Nuclear to file an answer, and because INVST took no action until after Chem-Nuclear's answer was filed, we conclude that the conduct of Chem-Nuclear's counsel, although careless and negligent, was not culpable within the meaning of the United Coin inquiry. We hold that Chem-Nuclear offered a credible explanation for the delay that did not exhibit disregard for the judicial proceedings.
 
 
 55
 This is not a case in which intransigence of the parties has made a default judgment appropriate. Instead, the procedural difficulties which led to the default judgment resulted from a misunderstanding between the attorneys involved. Default judgments should not be used to discipline attorneys; it is the client who suffers by being deprived of his day in court. Shepard Claims Service, 796 F.2d at 195.
 
 
 56
 Although a party who chooses an attorney takes the risk of suffering from the attorney's incompetence, we do not believe that this record exhibits circumstances in which a client should suffer the ultimate sanction of losing his case without any consideration of the merits because of his attorney's neglect and inattention.
 
 
 57
 Id.
 
 
 58
 The presence of an agreement granting an extension of time to answer, the ambiguity of the attempted revocation of that extension, and a lack of action on the part of INVST after the purported revocation lead us to conclude that the default judgment against Chem-Nuclear was the result of excusable neglect on the part of Garratt. To prevent manifest injustice to Chem-Nuclear, the default judgment must be set aside so that the case may proceed on the merits.
 
 
 59
 We are not unsympathetic to the plight of the district court in this matter. The lawyers took it upon themselves to thwart the Federal Rules of Civil Procedure by seeking and granting extensions of time without court approval. Although Reizen generously granted an indefinite extension of time for Chem-Nuclear to answer, Garratt abused that courtesy to such an extent that the rules became meaningless. Although counsel are encouraged to cooperate concerning waivers of procedural formalities,[3] the sloppy practice exhibited in this case is expressly disapproved. If extensions of time are to be granted to opposing counsel, those extensions should be short and specific. Counsel should reduce their agreed extension to writing and should file that agreement. Ideally, court approval of the extension should be obtained.
 
 
 60
 We do not address Chem-Nuclear's appeal of the refusal of the district court to grant summary judgment to Chem-Nuclear. The trial court expressly declined to consider the merits of Chem-Nuclear's motion for summary judgment, and this Court is not the appropriate forum to initially resolve such a motion. Upon remand, the district court will consider the merits of Chem-Nuclear's motion for summary judgment.
 
 
 61
 III. THE STANDARD FOR IMPOSING RULE 11 SANCTIONS
 
 
 62
 After Chem-Nuclear's answer was stricken for being filed untimely, Garratt filed a motion to dismiss, a motion for summary judgment, and a motion for recusal of the judge. INVST claimed it should be awarded attorney's fees and costs for having to defend against "harassing, frivolous, and unwarranted" motions which were filed only for the purposes of delay. Judge Gilmore agreed with INVST, imposing sanctions against Garratt personally for all three motions.
 
 
 63
 Federal Rule of Civil Procedure 11, as amended in 1983, provides:
 
 
 64
 [e]very pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
 
 
 65
 The 1983 amendment to Rule 11 removed much of the district court's discretion in imposing sanctions; Rule 11 now mandates the imposition of sanctions if the underlying conduct is found to violate the Rule. The standard by which conduct is judged has become more stringent as well; a showing of "good faith" will no longer be sufficient to avoid sanctions.
 
 
 66
 The conduct of counsel that is the subject of sanctions will be measured by an objective standard of reasonableness under the circumstances. Albright v. Upjohn Co., 788 F.2d 1217, 1221 (6th Cir.1986). See also Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F.2d 535, 540 (3d Cir.1985); Rodgers v. Lincoln Towing Service, Inc., 771 F.2d 194, 205 (7th Cir.1985); Westmoreland v. CBS, Inc., 770 F.2d 1168, 1177 (D.C.Cir.1985); Davis v. Veslan Enterprises, 765 F.2d 494, 497 (5th Cir.1985); Eastway Construction Corp. v. City of New York, 762 F.2d 243, 253-54 (2d Cir.1985).
 
 
 67
 Thus, we must determine whether Garratt's actions were reasonable under the circumstances. Although a district court is given wide discretion in deciding whether counsel have acted reasonably under the circumstances, "[t]he court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Fed.R.Civ.P. 11 advisory committee's note to the 1983 amendment. See also Eavenson, 775 F.2d at 540-41.
 
 
 68
 If a district court concludes that Rule 11 has been violated, the court has no discretion and must impose sanctions. However, in deciding the nature and extent of sanctions to impose, the district court is given wide discretion. See, e.g., Albright, 788 F.2d at 1221-22; Westmoreland, 770 F.2d at 1174; Veslan, 765 F.2d at 498, 501; see also Fed.R.Civ.P. 11 advisory committee's note to the 1983 amendment.
 
 
 69
 Garratt contends that the district court abused its discretion in imposing sanctions, abused its discretion in the amount of sanctions imposed, and violated Garratt's due process rights in the imposition of sanctions.
 
 
 70
 Although the district court did not set forth in writing the basis for imposing Rule 11 sanctions personally upon Garratt, the record contains an oral statement of those reasons.[4] We must determine whether the trial court abused its discretion in determining that Garratt's conduct was not reasonable under the circumstances.
 
 IV. MOTION FOR DISQUALIFICATION OF JUDGE
 
 71
 Garratt and his law firm entered an appearance for Chem-Nuclear in August. Garratt appeared before Judge Gilmore at a status conference in November 1983, and at a hearing in November 1984. However, Garratt and his firm did not move for Judge Gilmore's recusal until the January 1985 hearing on plaintiff's default judgment motion and defendant's motions to dismiss and for summary judgment. At that hearing, a member of Garratt's firm made an oral motion for recusal, without providing supporting documentation to show any alleged bias on the part of Judge Gilmore. In fact, a written recusal motion was not filed until the day of the hearing on the amount of damages to be awarded on the default judgment.
 
 
 72
 The damages hearing was delayed to permit Judge DeMascio to rule on the recusal motion. Judge DeMascio denied the motion for recusal, reasoning that Garratt's claims of bias involved only judicial actions in prior litigation, which Garratt perceived as being unfavorable to his firm. Because recusal is appropriate only where bias based on extrajudicial actions is shown, Judge DeMascio ruled that the motion was without merit[5] and recommended that Rule 11 sanctions be imposed for filing the motion for recusal.
 
 
 73
 Garratt's motion for recusal of Judge Gilmore violates all three sanctionable circumstances of Rule 11. The motion was not well-grounded in fact, was not warranted by existing law or a good faith argument for the extension of existing law, and was filed for the improper purpose of delaying the default judgment hearing.
 
 
 74
 Prior to Judge DeMascio's denial of Garratt's motion to recuse Judge Gilmore, Judges Guy and Churchill, fellow district judges of the Eastern District of Michigan at the time, had dismissed similar motions filed by Garratt to recuse Judge Gilmore. The basis for each motion was identical, and both times the motion failed. In filing the motion for recusal in the instant case, Garratt advanced no new fact or legal argument to support a different result.
 
 
 75
 Further, there was absolutely no legal basis upon which Garratt could have reasonably believed that adverse rulings in prior cases were sufficient to show bias. This court, in Southerland v. Irons, 628 F.2d 978, 980 (1980), explicitly held that "actions of a judge in pending or previous litigation in which the movant has been involved are not grounds for disqualification ..."
 
 
 76
 Garratt, however, contends that the facts of this case are an exception to the general rule requiring proof of extrajudicial bias because the comments of the judge during the proceedings were indicative of actual personal bias. Garratt contends that the conduct of Judge Gilmore exceeded the conduct found to be grounds for recusal in Nicodemus v. Chrylser Corp., 596 F.2d 152 (6th Cir.1979) and United States v. Ritter, 540 F.2d 459 (10th Cir.) cert. denied, 429 U.S. 951, 97 S.Ct. 370, 50 L.Ed.2d 319 (1976). However, the conduct of the district judge in Nicodemus which justified recusal was in the form of comments made by the judge before hearing the merits of the case, which comments displayed prejudice against a party. In Ritter, the court ordered recusal because it was reasonable to question the impartiality of the recused judge due to comments that he had made during motion hearings.
 
 
 77
 Neither Nicodemus nor Ritter are similar to the instant case. Garratt only complains that Judge Gilmore granted a motion to strike Chem-Nuclear's answer, granted plaintiff's motion for default judgment, denied defendant's motions to dismiss and for summary judgment, and described as "outrageous" certain of Garratt's legal arguments. The actions and comments of Judge Gilmore were a result of, and in response to, legally inconsistent or questionable arguments on the merits of the case. Judge Gilmore's comments do not in any sense indicate personal bias against Garratt or Chem-Nuclear. In fact, the comments of Judge Gilmore, when viewed in context, represent an understandable response to pending motions, some of which were patently without merit.
 
 
 78
 We conclude that Garratt violated Rule 11 by filing the motion for recusal. Accordingly, the imposition of sanctions on Garratt for filing the motion for recusal is affirmed.
 
 V. THE MOTION TO DISMISS
 
 79
 After defendant's untimely answer was stricken, Garratt filed on behalf of Chem-Nuclear a motion to dismiss plaintiff's complaint for failing to serve process on a "viable" party. In imposing sanctions, Judge Gilmore described the motion as "outrageous" because Garratt was belatedly arguing that Chem-Nuclear did not exist, after having filed an answer and counterclaim which did not raise this Fed.R.Civ.P. 12(b)(5) defense. The motion to dismiss for insufficiency of service of process had clearly been waived and was expressly prohibited as untimely by the Federal Rules of Civil Procedure. Fed.R.Civ.P. 12(h)(1). Because even a cursory review of Rule 12 would have revealed that the defense lacked any foundation in law, Garratt was properly sanctioned for the motion to dismiss for insufficiency of service of process.
 
 VI. MOTION FOR SUMMARY JUDGMENT
 
 80
 After the answer had been stricken, but before entry of default judgment, Garratt filed a motion for summary judgment contending that INVST was not entitled to a finder's fee. Garratt argued that no acquisition which would trigger payment of the fee had occurred; therefore, Chem-Nuclear owed nothing to INVST. The court denied the motion for summary judgment, reasoning "[i]t certainly does not make any sense to entertain a motion for summary judgment on the merits when I have prevented the defendant from filing an answer."
 
 
 81
 At the time Garratt filed the motion for summary judgment, Chem-Nuclear's answer had been stricken and the district court had advised plaintiff to take steps to protect its interest, but no default judgment had been entered. The defendant's motion for summary judgment, therefore, was a defensive measure anticipating plaintiff's motion for default judgment. The motion for summary judgment violated no rule of procedure and was filed before the motion cut-off date set by the court. Additionally, at the very least, it raised potentially meritorious defenses. Therefore, the summary judgment motion was not frivolous and does not constitute sanctionable conduct. No cases have been cited by INVST, and none have been found by this court, which stand for the proposition that the striking of an answer forecloses the right to file a motion for summary judgment. In fact, such a proposition would be illogical. In 1946, Fed.R.Civ.P. 56(a) was amended to allow a party to move for summary judgment "at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party." The advisory committee on rules noted that the amendment changed the earlier rule, which prevented a claimant from moving for summary judgment until a formal answer had been filed [apparently, even under the former rule a defendant was not precluded from moving for summary judgment until an answer was filed.] But see Johnston-Crews Co. v. United States, 38 F.Supp. 544 (E.D.S.C.1941); Hooven, Owens, Rentscher Co. v. Royal Indemnity Co., 1 F.R.D. 526 (S.D.Ohio 1940) ]. Fed.R.Civ.P. 56(a) advisory committee note (a) to the 1946 amendment. At any rate, the phrase "at any time" has since been given a literal construction. In First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968), the Supreme Court affirmed summary judgment in favor of a defendant who had not filed an answer, even though the litigation was six years old when defendant filed the motion for summary judgment. The Court found it significant that defendant had participated in discovery, and plaintiff had acquiesced in the delay and had entered into stipulations contributing to the delay. Cities Service, 391 U.S. at 291-92, 88 S.Ct. at 1593-94. Courts and commentators have acknowledged that no answer need be filed before a defendant's motion for summary judgment may be entertained. See Southern Pacific Transportation Co. v. National Molasses Co., 540 F.2d 213, 214 (5th Cir.1976) (court allowed summary judgment motion before answer filed; however, motion treated as Fed.R.Civ.P. 12(b)(6) motion because not accompanied by affidavits); Hubicki v. ACF Industries, Inc., 484 F.2d 519, 522 (3d Cir.1973) (summary judgment motion may be made before pleading to the complaint); Electro-Catheter Corp. v. Surgical Specialties Instrument Co., 587 F.Supp. 1446, 1456 (D.N.J.1984) (court noted that 1946 amendment to Rule 56(a) changed prior rule requiring answer before Rule 56 motion could be made); 10 C. Wright, A. Miller, M. Kane Sec. 2718 at 668 (1983) ("Defendant is not required by the rule to file an answer before moving for summary judgment.")
 
 
 82
 It is clear that no answer need be filed before a defendant may move for summary judgment. It follows that having an answer stricken poses no impediment to moving for summary judgment; the effect of striking an answer is to posture the action as if no answer had ever been made. This was the status of the present action when Garratt moved for summary judgment; the answer had been stricken and default judgment had not been entered against Garratt's client. Therefore, it was not sanctionable conduct, merely because the answer had been stricken, for Garratt to file the motion for summary judgment.
 
 VII. REASONABLENESS OF THE SANCTIONS
 
 83
 Garratt contends that the sanctions imposed upon him are unreasonable and excessive. Because we have reversed the imposition of sanctions for filing the summary judgment motion, and because the total amount of sanctions imposed for all three motions is not broken down into its component parts, a remand for calculation of the amount of sanctions is required.
 
 
 84
 In determining the amount to award as "reasonable expenses," a court must consider the goals of Rule 11 which are the deterrence and punishment of offenders and the compensation of their opponents for expenditure of time and resources responding to unreasonable pleadings or motions. See, e.g., Westmoreland, 770 F.2d at 1179-80; see generally Schwarzer, Sanctions Under the New Federal Rule 11-A Closer Look, 104 F.R.D. 181, 201 (1985). "Reasonable" does not necessarily mean actual expenses. See, e.g., In re TCI, Ltd., 769 F.2d 441, 448-49 (7th Cir.1985); Local No. 115, 106 F.R.D. at 349; see generally Schwarzer, supra, 104 F.R.D. at 203. Thus, in order to award the fees sought by plaintiff's counsel in this case, the court must find that the actions for which fees are sought were reasonably necessary to defend against the motions. A reasonableness inquiry necessarily requires a determination as to what extent plaintiff's expenses and fees could have been avoided and were self-imposed. When counsel is called upon to defend against its adversary's unreasonable motion practices, he must mitigate damages by correlating his response, in terms of hours and funds expended, to the merit of the claims[6]. The mitigation requirement prevents a party from misusing Rule 11 sanctions in order to benefit from the errors of opposing counsel. See Schwarzer, supra, 104 F.R.D. at 201; see also In re TCI, 769 F.2d at 448-49; Local No. 115, 106 F.R.D. at 349-50. The district court is therefore required to balance carefully these competing interests in determining the amount of sanctions.
 
 
 85
 The record is unclear whether the magistrate considered the mitigation factor in calculating the sanctions. It appears that the magistrate's focus was upon whether INVST's counsel actually expended the hours he claimed to have worked in responding to the three motions rather than upon whether the hours spent were reasonably necessary. Because we are unable to determine the actual basis for the sanctions imposed, and because we have reversed the award of sanctions stemming from the motion for summary judgment, upon remand the magistrate or district court should state the basis for the amount of sanctions awarded, including whether the hours were actually spent and were reasonably necessary. Such an analysis, focusing upon the necessity for the actual time spent, reduces the possibility that Rule 11 can be abused by a fee petitioner.
 
 VIII. DUE PROCESS CONSIDERATIONS
 
 86
 Garratt contends that the hearing held on the Rule 11 sanctions did not provide him due process. This contention is without merit. Garratt and Chem-Nuclear were given notice of the imposition of sanctions and an opportunity to explain the conduct for which the sanctions were imposed. The hearing was held before a magistrate acting as special master in calculating the amount of sanctions. At the hearing, Garratt's counsel fully cross-examined plaintiff's attorneys about the hours spent and fees charged. Garratt also submitted to the magistrate numerous documents setting forth his position which were also filed with the district court. Therefore, Garratt was afforded notice and opportunity for a hearing, as required by due process.
 
 
 87
 Furthermore, although the assessment of sanctions under Rule 11 must comport with due process, the procedure employed to assure due process will "depend on the circumstances of the situation and the severity of the sanction under consideration." Fed.R.Civ.P. 11, advisory committee note to the 1983 amendment. Accord Rodgers v. Lincoln Towing Service, Inc., 771 F.2d 194, 205-06 (7th Cir.1985). In Rodgers, the Seventh Circuit Court of Appeals upheld an award of sanctions even though no formal hearing on sanctions was held. According to the Rodgers court, no hearing was necessary where the district court which had imposed the sanctions had participated in the proceedings, and where the sanctions were not based on bad faith "but on counsel's incompetence in handling [the] matter by making 'frivolous' and 'worthless' claims 'without first making a proper inquiry into the relevant law and facts.' " Rodgers, 771 F.2d at 206.
 
 
 88
 In the present case, Garratt received more extensive due process protection than Rule 11 and the courts require. As the Rodgers case illustrates, no hearing is required where an attorney is sanctioned for filing frivolous motions ungrounded in law or fact, and where the judge imposing sanctions has participated in the proceedings. These are the circumstances in Garratt's case; nevertheless, he was afforded a full-blown hearing complete with confrontation privileges and an opportunity to present arguments and supporting documentation. Therefore, Garratt enjoyed more than minimum due process protection. See generally Rodgers, 771 F.2d at 206; LePucki v. Van Wormer, 765 F.2d 86, 88 (7th Cir.) (attorney did not have explicit notice, but due process satisfied if he knew the court was considering imposition of sanctions), cert. denied, --- U.S. ----, 106 S.Ct. 86, 88 L.Ed.2d 71 (1985); Eastway Construction Corp. v. City of New York, 637 F.Supp. 558 (E.D.N.Y.1986) (attorney must be allowed to present mitigating factors); In re ITEL Securities Litigation, 596 F.Supp. 226, 232 n. 7 (N.D.Calif.1984) (sufficient that accused is allowed to address the court with respect to allegations); Adduono v. World Hockey Association, 109 F.R.D. 375, 380 (D.Minn.1986) (sufficient if counsel is allowed opportunity before the court to oppose sanctions).
 
 IX. CONCLUSION
 
 89
 In INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc., the judgment of the district court is REVERSED and the case is remanded with directions to set aside the default judgment, to reinstate defendant's answer, and for further proceedings. No costs are allowed; each party will pay its costs on appeal.
 
 
 90
 In In re Garratt and Garratt & Morris, P.C., the judgment of the district court imposing sanctions for the motion to dismiss and motion for recusal is AFFIRMED. The judgment of the district court imposing sanctions for the motion for summary judgment is REVERSED. The case is remanded for a recalculation of fees and expenses awarded as sanctions and for further proceedings not inconsistent with this opinion.
 
 
 
 *
 The Honorable James D. Todd, United States District Judge for the Western District of Tennessee, sitting by designation
 
 
 [1]
 Garratt had sought the recusal of Judge Gilmore in three previous cases. Twice those motions were unsuccessful. In the third case, Judge Gilmore recused himself despite stating that he had no bias against Garratt. Judge Gilmore believed that an appearance of impropriety might arise because he had disqualified Garratt and his firm from representing a party in another case which was on appeal to the Sixth Circuit, General Mills Supply Co. v. SCA Services, Inc., 697 F.2d 704 (1982)
 
 
 [2]
 Plaintiff sought fees for 196 hours, totaling over $18,000.00, from Chem-Nuclear, its attorney, or both. At the hearing on sanctions, plaintiff's attorney sought over $25,000 in fees and costs for 254 hours
 
 
 [3]
 Model Code of Professional Responsibility, EC 7-38, (1980)
 
 
 [4]
 Rule 11 does not require written findings of fact and conclusions of law but the presence of such a statement in the record facilitates appellate review. Albright, 788 F.2d at 1221-22 (sanctions imposed despite absence of written findings of fact). But see Albright, 788 F.2d at 1222 (Guy, J., dissenting) (presence of findings of fact would require analysis under "clearly erroneous" standard)
 
 
 [5]
 Judge DeMascio relied upon Southerland v. Irons, 628 F.2d 978 (6th Cir.1980)
 
 
 [6]
 INVST described Chem-Nuclear's motion to dismiss as "so frivolous and vexatious that it hardly deserves to be dignified by a response." We cannot ascertain from the record how much of the claimed fees and expenses are attributable to this motion which "hardly" deserves a response