Thomas L. DAVIS, et al.,
Plaintiffs–Appellants,

James J. Condit, et al.,
Attorneys–Appellants,

v.

Hon. Thomas C. CRUSH, et
al., Defendants,

Planned Parenthood Association of
Cincinnati, Inc., et al.,
Defendants–Appellees.

No. 87–3361.

United States Court of Appeals,
Sixth Circuit.

Argued May 2, 1988.
Decided Nov. 23, 1988.

James J. Condit, Condit & Dressing, Cincinnati, Ohio, Charles T. Lester, Jr., Fort Thomas, Ky., Stephen T. McMurtry, Covington, Ky., for plaintiffs-appellants.

Robert A. Pitcairn, Jr., James B. Helmer, Jr., argued, Cincinnati, Ohio, for defendants-appellees.

Before LIVELY, MERRITT and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.

Plaintiffs-appellants Thomas L. Davis (Davis) and Donald Lee Johnson (Johnson) appeal the district court's assessment of monetary sanctions under Fed.R.Civ.P. 11 against them and their counsel. After reviewing the parties' briefs and relevant portions of the record, we reverse because the civil rights complaint filed in federal court by Davis and Johnson does not necessarily reflect a lack of reasonable inquiry into the facts or the law.

I.

This case arose from the intense controversy surrounding Planned Parenthood's Center for Counseling and Medical Operations in Cincinnati, Ohio. On December 30, 1985, the interior of the Margaret Sanger Center, owned by Planned Parenthood, was destroyed by a firebomb. Unable to continue operations there, patients, staff and other personnel relocated to the Center for Counseling and Medical Operations (Center) at 3332 Vine Street in Cincinnati. Shortly after the firebombing, various individuals and organizations began picketing

and protesting against the operations conducted in the relocated Center.

From Planned Parenthood's perspective, the protest degenerated into harassment, disruption of lawful business operations, and the creation of a safety hazard to both pedestrians and automobile traffic in the area. To address these perceived problems, Planned Parenthood brought suit in Hamilton County Common Pleas Court, seeking injunctive relief that would impose reasonable time, place and manner restrictions on the picketers' exercise of their first amendment rights of free speech and peaceful assembly. On June 20, 1986, defendant-appellee Judge Crush, after a hearing and review of videotapes of the activity outside the Center, issued a preliminary injunction placing restrictions on the time, place and manner of the picketers' activities. After the issuance of the preliminary injunction, the protests continued, and, in the view of Planned Parenthood, went beyond what was permissible under the preliminary injunction. Davis and Johnson were arrested outside the Center on June 28 for contempt of court for allegedly violating the preliminary injunction.

After their arrest, Davis and Johnson filed a civil rights suit under 42 U.S.C. § 1983 in federal district court against Judge Crush, Sheriff of Hamilton County Lincoln Stokes (Stokes), the Board of County Commissioners of Hamilton County, the Planned Parenthood Association, and Robert Hatfield (a director of Planned Parenthood), Timothy S. Black, Esq. and Alphonse Gerhardstein, Esq. The complaint charged that defendants Gerhardstein and Black met and conspired with Chief Deputy Sheriff Colonel Daniel Wolfangel, on June 27, 1986, without notice to and not in the presence of the class representatives or their attorneys, to devise a scheme for enforcing Judge Crush's preliminary injunctive order. Under this scheme, the complaint alleged, Planned Parenthood would be allowed to direct and control Wolfangel and his deputies, who would have no discretion in arresting picketers, but would solely carry out the orders to arrest given by Planned Parenthood. Sheriff Stokes was alleged to have acquiesced in this scheme, and to have participated actively in the arrests of Davis and Johnson on June 28, 1986.

The complaint alleged that defendant Hatfield, an agent of Planned Parenthood, "executed blank affidavits alleging that the plaintiffs Thomas L. Davis and Don Lee Johnson were in violation of the court's injunction and were in contempt thereof." (Complaint 6, para. 30). At Planned Parenthood's direction, and with active participation from Sheriff Stokes, and his deputy sheriffs, the complaint alleged, Davis and Johnson were unlawfully seized and arrested. The complaint stated that Judge Crush, "by attempting to bind the plaintiffs herein to the terms of the injunction, acted with a clear absence of jurisdiction over the persons of the plaintiffs, or acted with reckless disregard of clearly established law depriving him of jurisdiction." (Complaint 7–8, para. 38). It further stated that "Judge Crush knew, or acted in reckless disregard of clearly established law, that he had no authority or jurisdiction to order the arrest of persons such as plaintiffs who were not named as parties or acting in concert with named parties." (Complaint 8, 40). The complaint also alleged, however, that on June 30, 1986, Judge Crush, in open court, dismissed the contempt charges against Davis and Johnson.

The complaint charged that plaintiffs' rights under the first, fourth, fifth, eighth, ninth, and fourteenth amendments to the United States Constitution, and analogous rights under the Ohio Constitution, were violated. They also alleged that various violations of their Ohio common law rights. Plaintiffs sought $150,000 in compensatory damages, $300,000 in punitive damages, interest, and costs and attorneys' fees pursuant to 42 U.S.C. § 1988. Plaintiffs also sought an injunction to prevent all defendants from enforcing or attempting to enforce the June 20, 1986 preliminary injunction, which they asserted was facially invalid under the first and fourteenth amendments to the United States Constitution.

On August 13, 1986, the district court held, without reaching the merits, that entertaining this civil rights action would clearly be contrary to *Younger v. Harris,*

401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), which requires abstention from interference with state court proceedings, and that well-established law gave Judge Crush absolute immunity from damages for his official actions. *Davis v. Crush*, 646 F.Supp. 1192 (S.D.Ohio 1986). The district court also stated that it "entertain[ed] substantial doubt that plaintiffs were, prior to suit, familiar either with the *Younger* doctrine or *Pierson v. Ray* [386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) ]." 646 F.Supp. at 1196. Because it was clear that Judge Crush was absolutely immune from any damages in this suit, the court stated that "[a]ttorneys who have counseled and brought such a suit have interposed an action intended to harass and cause unnecessary delay in violation of Rule 11, Fed.R. Civ.P., and are also liable for reasonable attorney fees to the prevailing party." *Ibid.* The court dismissed the complaint at plaintiffs' costs. On September 11, 1986, plaintiffs appealed the district court decision to this court, but voluntarily dismissed their appeal on January 23, 1987.

Shortly thereafter, two motions were filed in the district court for attorneys' fees pursuant to 42 U.S.C. § 1988, and fees as sanctions under Rule 11, Fed.R.Civ.P. Defendant Black filed one motion, and one was filed on behalf of defendants Planned Parenthood, Hatfield and Gerhardstein. Defendants Judge Crush, Stokes and Board of County Commissioners did not request attorney fees. Finding that Rule 11 had been violated, the district court ordered that plaintiffs' counsel pay $1,000 in attorneys' fees to defendant Black, $1,000 in attorneys' fees to defendant Gerhardstein, and $500 in attorneys' fees to defendants Planned Parenthood and Hatfield. *Davis v. Crush*, 656 F.Supp. 468, 471 (S.D.Ohio 1987). The court found that because of the availability of various state remedies "the selection of the United States District Court was in fact intended to harass." *Id.* at 470. It found that assertions in the complaint about Black's participation in the alleged conspiracy were "factually incorrect and were known to be so at or about the time the complaint was filed." *Id.* at 470. The court found the allegations in the

complaint regarding Gerhardstein to lack any evidentiary basis whatsoever. *Ibid.* Arguing that "constitutional rights are not the exclusive province of the Federal Courts," *ibid.*, the court maintained that Rule 11 was violated as to Planned Parenthood and Hatfield because plaintiffs could have appealed the injunction to the proper state appellate court, or applied directly to the Ohio Supreme Court for either a Writ of Mandamus or a Writ of Prohibition. *Ibid.* The court also noted that the plaintiffs had twice unsuccessfully used Affidavits of Bias or Prejudice (which under Ohio law are presented directly to the Ohio Supreme Court) to attempt to remove Judge Crush from the case. *Ibid.*

## II

Federal Rule of Civil Procedure 11, as amended effective August 1, 1983, provides in part:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated.... The signature of an attorney or party constitutes a certificate by the signer that the signer read the pleading, motion or other paper, that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

In order to be exposed to Rule 11 liability, an attorney must sign the pleadings or papers filed in the district court which are the focus of inquiry. *Rathbun v. Warren City Schools* (In Re *Ruben*), 825 F.2d 977, 984 (6th Cir.1987).

The notes of the Advisory Committee on Rules explain that "[t]he new language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule."

Fed.R.Civ.P. 11 Advisory Committee's notes. They further state that "[t]he standard is one of reasonableness under the circumstances," and that "[t]his standard is more stringent than the original good faith formula and thus it is expected that a greater range of circumstances will trigger its violation...." *Ibid.*

If the court finds that this principle has been violated, Rule 11 provides that

> the court, upon motion or upon its own initiative, *shall* impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11 (emphasis supplied).

The mandatory word "shall" is intended to remove the exercise of discretion by the court in imposing Rule 11 sanctions once it has found a violation. The notes of the Advisory Committee on Rules also state that "[t]he new language is intended to reduce the reluctance of courts to impose sanctions ... by emphasizing the responsibility of the attorney and reinforcing those obligations by the imposition of sanctions...." Fed.R.Civ.P. 11 Advisory Committee's notes.

■ To prevail in an appeal from the imposition of Rule 11 sanctions, an appellant "must show that the district court abused its discretion in finding that his conduct was not reasonable under the circumstances." *Century Products, Inc. v. Sutter,* 837 F.2d 247, 250 (6th Cir.1988) (citations omitted). Relevant factors for determining whether the reasonable inquiry test has been met in a given case include: "the time available to the signor for investigation; whether the signor had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether the signor depended on forwarding counsel or another member of the bar." *Id.* at 250–51 (citation omitted).

■ We have recently stated that the "[t]he court is expected to avoid using the wisdom of hindsight and should test the signor's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *INVST Financial Group v. Chem–Nuclear Systems (In Re Garratt),* 815 F.2d 391, 401 (6th Cir.1987) (quoting Fed.R.Civ.P. 11 Advisory Committee's note to the 1983 Amendment). An objective standard of reasonableness under the circumstances must be the measure of counsel's behavior. *Century Products,* 837 F.2d at 251, 253.

■ The focus of any Rule 11 inquiry for the district court must be pleadings, motions, or other papers filed in the district court, as opposed to those filed in state courts or in federal Courts of Appeals. Thus, a district court may not threaten to impose Rule 11 sanctions on attorneys for taking a "frivolous" appeal, or condition Rule 11 sanctions on the outcome of an appeal. *Webster v. Sowders,* 846 F.2d 1032, 1039–41 (6th Cir.1988).

■ In *Century Products,* we noted that the issue of whether counsel's behavior was objectively reasonable under the circumstances is "a mixed question of law and fact." 837 F.2d at 253. Still, "an abuse of discretion standard of review of the district court's decision to grant Rule 11 sanctions is proper." *Ibid.* Because the district court will be more familiar with the circumstances of the case under review, we rejected the argument that a *de novo* standard of review should apply instead. *Ibid.*

■ "[A] district judge faced with a sanction motion must make certain findings in determining that an award is appropriate." *Rathbun v. Warren City Schools (In re Ruben),* 825 F.2d 977, 990 (6th Cir. 1987). "Careful analysis and discrete findings are required, no matter how exasperating the case." *Id.* at 991. We have held that although the assessment of Rule 11 sanctions must comport with procedural due process, a separate hearing on a motion for Rule 11 sanctions is not necessarily required. *INVST,* 815 F.2d at 405. However, in that case there had been a hearing

(trial) on the original complaint. When, as here, the case was dismissed without trial, due process may require "some kind of hearing."

A district court must keep in mind that while "the grounds for sanctions ... are designed to improve the litigation process, ... improvement cannot come at the expense of vigorous advocacy." *Rathbun*, 825 F.2d at 991. Indeed, the notes of the Advisory Committee on Rules indicates that "[t]he rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories...." *Ibid.* In determining whether Rule 11 has been violated by counsel, "[d]istrict courts must strike a delicate balance between protecting the adversary system and not allowing attorneys to exploit the system for their own purposes." *Rathbun*, 825 F.2d at 991. This is not to say that striking this balance is an easy task, only a necessary task if, in the representation of clients by lawyers, zeal and creativity are not to be discouraged.

### III

In determining that Rule 11 had been violated by the plaintiffs and their lawyers, the district court conducted separate inquiries as to the reasonableness of the plaintiffs' actions in suing each defendant. After the plaintiffs voluntarily dismissed their appeal to this court from the decision reported as *Davis v. Crush*, 646 F.Supp. 1192 (S.D.Ohio 1986), only defendants Black, Gerhardstein, Planned Parenthood, and Hatfield sought attorney's fees under 42 U.S.C. § 1988 and fees as sanctions under Rule 11. Defendants Crush, Stokes, and the Board of County Commissioners did not make any request.

The court first examined defendant Black's situation. Black was both a lawyer and a member of the Board of Directors of Planned Parenthood. Although the merits of the complaint were not addressed at any time by the district court, it found that "Mr. Black was charged with activities which either did not occur or were within the ambit of duties that an attorney accepts upon representation." 646 F.Supp. at 470. The court indicated that the complaint charged Black with "impropriety in [his] meeting with the Sheriff of Hamilton County, with his presence at events on June 28, 1986, and with his notarizing of affidavits served on the Plaintiffs prior to their arrests." *Ibid.* The court found that these allegations were "factually incorrect and were known to be so at or about the time the complaint was filed." *Ibid.* It based these findings on what it characterized as admissions by plaintiffs' counsel at oral argument. *Ibid.* Thus, the court reasoned that "no reasonable inquiry" into the facts had been made regarding Black.

Plaintiffs note on appeal that defendant Black was the only defendant to file an answer to the charges against him. In this answer, he admitted to being present at the alleged conspiracy meeting on June 27, 1986. (Answer by Black, para. 14). Moreover, the plaintiffs correctly point out that the district court erred in stating that the *complaint* asserted that Black was present at the events of June 28, 1986 or that Black notarized affidavits on June 28, 1986. The source of the error, the plaintiffs suggest, must have been a document entitled Plaintiffs' Response to Defendant Black's Motion for Attorney Fees, which was filed after the instant complaint was filed. Furthermore, the district court erred in suggesting that the complaint focused on Black as an attorney. Indeed, the complaint clearly states that Black acted "at all times" as a member of the Board of Directors of Planned Parenthood. (Complaint 2, para. 9).

The court next examined Gerhardstein's situation. The court found that the complaint charged that Gerhardstein improperly met with Chief Deputy Sheriff Colonel Daniel Wolfangel for the purpose of devising a scheme to enforce Judge Crush's preliminary injunctive order, but that "[n]o evidence has been presented to the Court or ever submitted that would indicate that Mr. Gerhardstein acted other than as a responsible and conscientious attorney." 656 F.Supp. at 470. The court stated that "[n]either in oral argument nor in memo-

randum have Plaintiffs established any impropriety in such meeting." *Ibid.*

Plaintiffs argue on appeal, however, that they had no burden to submit all of the evidence to prove their case at the time they filed the complaint. They point out that deposition testimony purporting to describe Gerhardstein's actions at the meeting of June 27 had not been transcribed and filed with the district court prior to the *Younger* dismissal of the lawsuit on August 13, 1986. Moreover, plaintiffs indicate that Gerhardstein had not filed an answer to the charges in the complaint. Even in the motion for attorney fees under 42 U.S.C. § 1988, Gerhardstein did not deny any of the factual allegations against him other than to argue that he was a "judicial officer" and was thus entitled to immunity. Furthermore, Black stated in his Answer that Gerhardstein participated in the June 27, 1986 meeting on which the conspiracy charges are based.

The court next examined the situation of Planned Parenthood and Hatfield. It found that the plaintiffs "had at their disposal a number of remedies from Judge Crush's order of injunction without resort to the United States District Court." 656 F.Supp. at 470. The court then enumerated the various state remedies the plaintiffs could have pursued. Because of the availability of these state remedies, the court reasoned, "the selection of the United States District Court was in fact intended to harass." *Ibid.* The court also recognized, however, that the plaintiffs had twice unsuccessfully attempted to use the state remedy of the Affidavit of Bias and Prejudice. Under Ohio appellate procedure, the Affidavit of Bias and Prejudice is presented directly to the Ohio Supreme Court, bypassing the intermediate appellate court. Thus, while we agree with Chief Judge Rubin that "constitutional rights are not the exclusive province of the Federal Courts," *ibid.*, the plaintiffs may have had reason to believe that the Ohio state courts would not fully and fairly litigate their constitutional claims.

By citing to its previous opinion dismissing the plaintiffs' suit, 656 F.Supp. at 470, the court suggested that *Younger v. Harris* and its progeny so clearly required the district court to abstain from ruling on the merits that no lawyer who had made reasonable inquiry into this line of authority would have filed the suit in federal district court. After careful consideration, we must disagree. We reach this conclusion without determining whether *Younger* and its progeny would in fact require dismissal of the suit. We need only conclude that there is room for reasonable disagreement as to whether abstention was required in these circumstances. After determining that *Younger* requires abstention, a district court abuses its discretion to proceed with Rule 11 sanctions based on a lack of reasonable factual inquiry, without a factual basis to measure the complaint beyond the complaint itself and affidavits.

Plaintiffs argue on appeal that the state court issued an injunction addressed to a class of defendants defined as all "persons picketing [in the vicinity of the Margaret Sanger Center] who have been personally served with a copy of [the injunction]." (See Preliminary Injunction). The injunction defined "persons picketing" as "anyone present in the vicinity of the Center who is carrying a sign, distributing literature, speaking publicly, or otherwise engaged in activity intended to inform, influence or persuade the public about any matter of public interest." The plaintiffs argue that the class of persons to whom the injunction was directed was unduly broad, as it covered persons who had never picketed the Center before the injunction, who had never committed the tortious acts on which the injunction was based, who did not know or had no affiliation with any of the named parties, and who were acting independently of them. While defendants argue that the plaintiffs were "clearly acting in concert with the parties to the state court litigation," the complaint alleges that plaintiffs were complete strangers to the state court litigation and were acting independently of the parties named in the state court proceeding. The complaint stated:

Plaintiffs Thomas L. Davis and Don Lee Johnson, were and are not parties to that [state court] lawsuit, had never received

actual or constructive notice of the lawsuit or been given an opportunity to respond thereto, had never engaged in any of the activities complained of in the lawsuit, and were not affiliated with any of the parties to the lawsuit.

(Complaint 3, para. 12.)

In *Younger* and its progeny, the person seeking injunctive or declaratory relief from the federal court was challenging a pending or threatened state proceeding. Indeed, abstention is based, *inter alia*, on the premise that the person seeking injunctive or declaratory relief from the federal court has, or will have, an opportunity to "fully and fairly litigate" his constitutional claims in the state court. If, as the complaint alleges, any contempt charges against the plaintiffs have been dismissed by the state court, then an underlying premise of *Younger* abstention may be absent. Moreover, the plaintiffs were not necessarily requesting relief typically barred under *Younger*. They did not request the district court to enjoin any pending or threatened state court criminal or civil contempt proceeding. Plaintiffs did request, however, prospective relief from any attempted future enforcement of the state court's injunctive order against them, on the basis that, *inter alia*, they were not parties to the lawsuit leading to the injunction and had no right of appeal in the state court in these circumstances. They also complained that the enforcement of the state court's injunctive order against them was part of a conspiracy against their civil rights.

We find it necessary to dispel any notion that defendants Black, Gerhardstein, Planned Parenthood and Hatfield were absolutely immune from damages because they were acting in the capacity of "judicial officers." Appellees argue that "[t]here is no legal or factual basis for imposing liability on Defendants Black, Hatfield, Gerhardstein, and Planned Parenthood, who were acting solely as judicial officers in carrying out Judge Crush's Preliminary Injunctive Order." They further argue that "... as judicial officers, all Defendants were immune from liability for damages." They also contend that "[t]he judicial offi-

cers acting at Judge Crush's direction on the basis of a facially valid order, were also entitled to absolute immunity as a matter of law."

First, we find nothing in the record to support the view that the above defendants were acting at Judge Crush's direction in acomplishing the arrest of the plaintiffs. The Preliminary Injunctive Order and the "order to the Sheriff" are the only record documents having any conceivable bearing on this issue. Neither document delegates any duties to any above defendant, nor directs any defendant to perform acts for the court. Indeed, the record is barren of an order directing or authorizing any defendant, excepting the Sheriff himself, to do anything at all.

Second, the complaint alleges that the defendants conspired for the purpose of devising a scheme to deprive citizens of various constitutional rights, and that some defendants, *under color of state law*, arrested the plaintiffs pursuant to this scheme. The complaint does not concede that the defendants Black, Hatfield, and Gerhardstein were "state officials" or "judicial officers." Rather, the burden of the complaint is that these persons conspired with state officials to direct the officials in making arrests without probable cause and without the officials believing there was probable cause. It is exactly as if the head of a local Klan were to conspire with the sheriff to arrest certain civil rights demonstrators without probable cause, whether or not some other demonstrators might in fact have been violating a court injunction. We know of no principle which allows private citizens or state officials to cloak themselves with the immunity that attaches to a judge even if they subjectively believe they are attempting to assist in carrying out a judicial ruling.

Thus, the district court's conclusion that the plaintiffs and their lawyers had failed to conduct a reasonable inquiry into the law and facts on which this lawsuit is based is necessarily erroneous, and therefore the district court abused its discretion in assessing attorney's fees under 42 U.S.

C. § 1988 as sanctions under Fed.R.Civ.P. 11. We express no view on the district court's decision to abstain, or on the merits of the plaintiffs' suit. We hold only that the imposition of Rule 11 sanctions against the plaintiffs in the instant case was an abuse of discretion. To uphold the district court's imposition of Rule 11 sanctions in the instant case would operate to chill the bringing of facially valid civil rights suits in federal court, a consequence that Rule 11 was never intended to promote. Therefore, the district court's decision and its assessment of monetary penalties under Rule 11 against the plaintiffs and their lawyers are REVERSED.