In the Matter of STUDIO CAMERA SUPPLY, INC., a Michigan corporation, Debtor.

Bankruptcy No. 84 00240G.
Civ. No. 89–CV–72765.

United States District Court,
E.D. Michigan, S.D.

July 5, 1990.

---

Lawrence G. Campbell, Detroit, Mich., for appellants.

William J. Weinstein, Southfield, Mich., for debtor.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

Appellants, Eric J. McCann and Eric J. McCann, P.C., appeal the Bankruptcy Court's imposition of sanctions against them pursuant to Fed.R.Civ.P. 11 (Rule 11). For the reasons that follow, this Court will affirm.

### I.  BACKGROUND

On December 18, 1981, Studio Camera Supply, Inc. (Studio) filed suit against Compuware Corporation (Compuware) in the Oakland County Circuit Court.   Studio's Complaint alleged, among other things, that Compuware breached a contract for the installation of a computer system.  The Complaint also alleged fraud and/or misrepresentation in breach of various warranties and sought damages in excess of $10,-000.   On April 21, 1983, Studio's lawsuit was mediated at $40,000 in favor of Studio. Compuware accepted the Mediation award and Studio rejected it.

On January 24, 1984, an involuntary bankruptcy petition was filed against Studio by its creditors.  On February 29, 1984, Studio filed a Petition for Relief under Chapter 11 of the United States Bankruptcy Code.  On February 28, 1985, Studio filed a Plan of Reorganization and Disclosure Statement, which provided for the payment of 45% of allowed claims of unsecured creditors and estimated total plan payments to be between $650,000 and $675,000.

The February 1985 Disclosure Statement, under the heading "Pending Litigation," revealed that Studio had instituted

an action against Compuware to recover in excess of $10,000, that the action was pending and that a trial was expected to take place between May and June, 1985. A liquidating balance sheet as of February 8, 1985 attached to Studio's Amended Plan of Reorganization listed among the Debtor's assets "proceeds from Compuware litigation—$26,800.00" and contained a footnote stating "proceeds on Compuware litigation based on original mediation summary award of $40,000 less 33% contingency fee."

An Amended Plan of Reorganization was filed by Studio on April 10, 1985. A hearing on the Disclosure Statement was held in the Bankruptcy Court on May 24, 1985 and a "Notice of Confirmation" of the Plan of Reorganization was issued on July 16, 1985. The Plan of Reorganization as confirmed provided for satisfaction of the claims of unsecured creditors upon payment of 45% of their allowed claims. The Plan did not specifically provide for the disposition of the proceeds of the Compuware litigation.

Beginning July 22, 1986, the Studio–Compuware lawsuit was tried in Oakland County Circuit Court. On September 9, 1986, a jury returned a verdict of $357,413.46 in favor of Studio and against Compuware. Compuware appealed the verdict to the Michigan Court of Appeals and the Michigan Supreme Court. In connection with such appeals, Compuware caused a letter of credit in the amount of the judgment plus interest to be issued in favor of Studio by Comerica Bank, payable upon termination of all appeals. (As of June 28, 1989, the total amount payable under the aforesaid Judgment, plus interest, was in excess of $825,000). On May 31, 1989, the Michigan Supreme Court denied Compuware's Petition for Leave to Appeal.

On or about June 28, 1989, Compuware filed its Petition under 11 U.S.C. § 350 to reopen the Studio Bankruptcy Estate and a Motion for Injunction seeking to have the Court enjoin the payment by Comerica upon its letter of credit and instead, seeking to have such funds paid into the reopened Bankruptcy Estate. The primary basis for the relief sought by Compuware were: (1) an allegation that Studio had concealed in its Disclosure Statement and Plan of Reorganization the fact that the Compuware litigation was continuing and the fact that Studio felt it had a higher value than $40,000 in order to induce its creditors to accept its Plan of Reorganization and (2) a claim that Studio was "judicially estopped" to deny this value and keep the higher judgment amount.

On July 3, 1989, the Bankruptcy Court, The Honorable Ray Reynolds Graves presiding, entered an Ex–Parte Injunction reopening Studio's Bankruptcy Estate, enjoining Comerica from disbursing letter of credit funds to Studio and setting a hearing on the continuation or dissolution of the injunction for July 5, 1989. On July 5, 1989, Studio filed an Answer to Petition to Reopen Bankrupt Estate and Affirmative Defenses to Answer to Petition to Reopen Bankrupt Estate.

On July 7, 1989, Judge Graves rendered a Memorandum Opinion and Amended Order dissolving the Ex–Parte Injunction and rescinding the Order reopening the case. Judge Graves found that not even a "preliminary case" of fraud against Studio Camera or its President, Ahmed Ismail, had been presented. Judge Graves further stated that counsel for Compuware "failed to make even a minimum inquiry into the facts and circumstances of this case" prior to initiating the proceedings to reopen the case, and that counsel for the Studio Creditors' Committee could have confirmed or denied whether the creditors as a whole had been deceived, misled or made victims of fraud.

On July 13, 1989, Studio filed a Motion for Sanctions Under Rule 11 against Eric J. McCann and Eric J. McCann, P.C. and Compuware Corporation. A hearing was held on the Motion on August 18, 1989. On September 7, 1989, Judge Graves entered an Order Granting Sanctions in the amount of $9,370.00 "to compensate it (Studio) for reasonable attorney fees and for time, effort and expense incurred by its President, Ahmed Ismail."

■ Appellants filed this appeal and seek reversal of the Order granting Rule 11 Sanctions on the basis that the sanctions should not have been awarded or, in the alternative, if the Court finds that sanctions were appropriate, the amount of the sanctions awarded was unreasonable. The Court will apply an abuse-of-discretion standard in reviewing all aspects of the Bankruptcy Court's Rule 11 determination. *Cooter & Gell v. Hartmarx Corp.,* —— U.S. ——, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

## II. OPINION

■ The issue is whether to the best of appellant's knowledge, information and belief formed after reasonable inquiry, the motion to re-open the bankrupt estate was well grounded in fact and warranted by existing law or good faith argument for the extension, modification or reversal of existing law. *See* Rule 11. In this case the answer is clearly, no.

■ Rule 11 imposes upon an attorney or party an affirmative duty to conduct a reasonable inquiry into both the facts and the law prior to signing and filing a pleading. The rule also requires that the pleading not be filed for any improper purpose. *See Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor,* 875 F.2d 1224, 1229 (6th Cir.1989). The court must judge the attorney's conduct by an objective standard of reasonableness under the circumstances at the time the pleading is filed. *See INVST Financial Group, Inc. v. Chem–Nuclear Systems, Inc.,* 815 F.2d 391, 401 (6th Cir.), *cert. denied,* 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987). To prevail on an appeal from the imposition of Rule 11 sanctions, appellants must show that the Bankruptcy Court abused its discretion in finding that their conduct was not reasonable. *Cf. Davis v. Crush,* 862 F.2d 84, 88 (6th Cir.1988); *Century Products, Inc. v. Sutter,* 837 F.2d 247, 250 (6th Cir.1988).

The basis upon which appellants approached the Bankruptcy Court with their Motion for Injunction and To Reopen the Bankrupt Estate was that Studio had de-frauded its creditors by disseminating false and/or misleading information with respect to the Compuware litigation in Oakland County Circuit Court. This Court, having reviewed the entire matter, is of the opinion that there was absolutely no basis for appellants' actions.

It is clear from the record that Studio had fully and adequately advised the attorney for the Creditors' Committee and each creditor of the correct status of the then pending lawsuit against Compuware. Each creditor knew that the Mediation award had not been accepted and that a trial was to take place between May and June of 1985.

In addition, the record reveals that Studio's counsel had advised the attorney for the Creditors' Committee of the legal problems that affected the then pending litigation against Compuware, to-wit:

A) That Studio had only one prime witness, Ahmed Ismail, whose testimony would be disputed by a number of defense witnesses on material issues of fact;

B) That the result of this lawsuit was uncertain and that the trial was expected to take place in the Spring or Summer of 1985;

C) That if the Creditors' Committee took over the assets of the Bankrupt, i.e., the lawsuit against Compuware, Studio's main witness, Ahmed Ismail, its then president, would have no real motivation to be involved, except as a witness at the trial;

D) That Ahmed Ismail's knowledge of the facts, knowledge of computers and the difficulty of proof on the issue of damages were such that without Ismail's active participation in the preparation of the case for trial and his total cooperation during trial, the case would be very difficult for Studio's counsel to try;

E) This being the case, if the Creditors' Committee took over the lawsuit as an asset, Studio's counsel would not be interested in pursuing the case on a contingency fee contract, which had been approved by the Bankruptcy Court; and

F) that the Creditors' Committee would have to seek other counsel.

In late 1984, Studio's accountant had forwarded to the attorney for the Creditors' Committee a liquidating balance sheet that clearly indicated a book value of the Compuware lawsuit at $300,000.00, but a *liquidating* value of. $26,800.00, with a note explaining that this was based upon the Mediation award.

In sum, Studio had clearly revealed throughout the pendency of the bankruptcy matter the true state of affairs with respect to its pending lawsuit with Compuware. Appellants clearly made certain representations to Judge Graves which proved to be false, misleading and totally inaccurate. Therefore, Judge Graves' imposition of sanctions was not an abuse of discretion. The Court notes that as a matter of the sound administration of justice, Judge Graves is owed deference, as he was in the best position to decide whether sanctions were appropriate. Because a determination of whether a legal position is "substantially justified" depends greatly on factual determinations, Judge Graves was better positioned to make such factual determinations. *Pierce v. Underwood*, 487 U.S. 552, 559–62, 108 S.Ct. 2541, 2547–48, 101 L.Ed.2d 490 (1988). Accordingly, the Bankruptcy Court's imposition of sanctions is hereby AFFIRMED.

■ Having found that sanctions were proper, the Court will address appellant's alternative argument; that the amount of sanctions awarded was unreasonable. The Bankruptcy Court awarded $9,370.00. The primary purpose of Rule 11 sanctions is deterrence, not compensation. *Mann v. G. & G Manufacturing*, 900 F.2d 953, 962 (6th Cir.1990), quoting *Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor*, 875 F.2d 1224, 1229–30 (6th Cir.1989); *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3rd Cir.1988). One commentator has suggested that the "[b]asic principle ... is that the least severe sanction adequate to serve the purpose should be imposed." Schwartzer, *Sanctions under the New Federal Rule 11, A Closer Look*, 104 F.R.D. 181, 201

cited in *Brown v. Federation of State Medical Boards of U.S.*, 830 F.2d 1429, 1437 (7th Cir.1987), and *Cabell v. Petty*, 810 F.2d 463, 466–67 (4th Cir.1987).

■ A court's decision in fashioning an appropriate sanction should be informed by equitable ˙ considerations, including the sanctioned party's ability to pay. *Mann v. G & G*, 900 F.2d at 962 quoting *Jackson v. Law Firm*, 875 F.2d at 1229–30; *Kapco Mfg. Co., Inc. v. C & O Enterprises, Inc.*, 886 F.2d 1485 (7th Cir.1989); *Doering*, 857 F.2d at 195; *Oliveri v. Thompson*, 803 F.2d 1265, 1281 (2nd Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). *See also Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 158 (3rd Cir.1986) ("the conduct of an experienced lawyer or of a lawyer who acted in bad faith is more apt to invite assessment of a substantial penalty than that of a less experienced or merely negligent one.").

■ It is the opinion of this Court that under the circumstances in this case, the amount of the sanction was appropriate. Appellants filed a false and misleading petition with the Bankruptcy Court without giving any notice to opposing counsel as required by court rules. It is abundantly clear that the false representations were not the result of innocent mistake of law or fact by Mr. McCann. Mr. McCann's deliberate, willful and malicious actions necessitated an unwarranted expenditure of time by Studio's counsel and the president of Studio. All counsel involved submitted detailed bills documenting the necessary time spent obtaining the dissolution of the Ex-Parte Injunction. Accordingly, the amount of sanctions imposed is hereby AFFIRMED.

IT IS SO ORDERED.