**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**E.J. SACCO, INC., Defendant.**

**No. 98–CV–75627–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

June 30, 2000.

Ellen G. Ha, Adele Rapport, Equal Employment Opportunity Commission, Detroit, MI, for plaintiffs.

Robert M. Vercruysee, Vercruysee, Metz & Murray, Bingham Farms, MI, for defendants.

## ORDER GRANTING DEFENDANT'S MOTIONS FOR SANCTIONS, COSTS, & ATTORNEY FEES

CLELAND, District Judge.

### I. Background

This case presented the court with a groundless prosecution based on demonstrably false claims made by a powerful government agency. Wholly illusory racial discrimination charges were filed by the federal Employment Opportunity Commission ("EEOC") against a small business in central Michigan in the wake of an attempted embezzlement of store proceeds one October afternoon in 1997.

Pending before the court are three related motions filed by defendant requesting various costs, attorney fees, and sanctions against plaintiff EEOC for its unreasonable actions in prosecuting this case. Because the reasons proffered for the motions are related and overlapping, and because resolution of this case on summary judgment permitted the court to become fully educated as to the merits of the suit and the parties' actions therein, the court elected to hold consideration of these motions in abeyance pending resolution on the merits. The court granted defendant E.J. Sacco, Inc.'s motion for summary judgment in this matter on August 31, 1999, and incorporates by reference the opinion order of that date. The merits having been passed on, the court now finds that defendant's motions should be granted *in toto.*

Defendant first filed a "Motion for Rule 11 Sanctions" on March 10, 1999, alleging that the EEOC's filing of a complaint and continued prosecution of the lawsuit were frivolous under Fed.R.Civ.P. 11(b)(3) because the suit had no factual or legal basis, and the EEOC was aware of that fact. The EEOC responded on March 30, 1999, and defendant replied on April 6, 1999.

Defendant next filed on March 26, 1999 a "Motion to Determine the Sufficiency of Plaintiff's Objections & Answers to Defendant's Request for Admissions & for Sanctions." Defendant alleged that the EEOC had objected to or denied numerous requests for admissions propounded to them by defendant well into discovery, despite the uncontroverted evidence supporting those requests, and that the EEOC's actions thereby violated Fed.R.Civ.P. Rules 36(a) and 37(a)(4). The EEOC responded on April 20, 1999, and defendant replied on April 26, 1999.

Finally, defendant filed its "Application for Costs, Fees, & Expenses Pursuant to 28 U.S.C. § 2412 and in Support of Its Motion for Sanctions." Relying on its previous arguments from the aforementioned motions, as well as the court's findings in the August 31 order granting summary judgment, defendant alleged that it should be entitled to all reasonable costs and attorney fees because the EEOC's case was meritless. The EEOC responded on October 7, 1999, and defendant replied on October 18, 1999. The parties agreed in their

briefs that the court's consideration of the attorney fees issue should be guided by Title VII, 42 U.S.C. § 2000e–5(k), rather than by 28 U.S.C. § 2412.

Because it constitutes a distinct issue concerning the conduct of discovery independent of the ultimate merits of the suit, the court will first address defendant's second motion regarding the request for admissions. The court will then turn to the two motions concerning costs, attorney fees, and sanctions, brought pursuant to Rule 11 and Title VII, as those motions seek the same results and necessarily depend on the merits of the EEOC's case and conduct.

## II. Discovery Sanctions

In approximately March of 1998, race discrimination charges were filed with the EEOC by Erica Galloway and Jennifer Thomas. The EEOC filed its original complaint in this matter on August 25, 1998, after having had approximately five months to conduct an investigation of the facts underlying this case pursuant to its statutory authority under 42 U.S.C. § 2000e–5(b). *See, e.g., U.S. E.E.O.C. v. Illinois State Tollway Authority*, 800 F.2d 656, 657–58 (7th Cir.1986) (discussing EEOC's extensive power to conduct internal investigations, including its subpoena power). Subsequent to the filing of the complaint, and in addition to the initial investigation, EEOC attorneys attended nine fact witness depositions, and were able to review the documents relevant to the case.

After that discovery had transpired, defendant served a request for admissions upon the EEOC on January 27, 1999, pursuant to Fed.R.Civ.P. 36(a). In relevant part, the Rule provides:

[After a request for admissions has been served] ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney. If objection is made, the reasons therefore shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder. An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny. A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request; the party may, subject to the provisions of Rule 37(c), deny the matter or set forth reasons why the party cannot admit or deny it.

*Id.* In short, a party faced with a request for admissions must either admit to the proffered statement or explain why it cannot admit to the statement.

On February 25, 1999, the EEOC objected to or denied 19 of the 33 proffered requests for admission. Defendant then filed the instant motion, alleging that the EEOC had failed to comply with Rule 36(a). The court's review of the responses indicates that defendant's allegation is well founded. In its responses, the EEOC denied or objected to several requests on the grounds that it could not "admit" to facts not stated or done by the charging parties; in other words, the EEOC claimed it could not stipulate as true a sworn, uncontradicted statement by any witness other than the complaining individuals. In other responses, the EEOC simply denied plain factual assertions that were also based on sworn, uncontradicted testimony, without so much as an explanation. Furthermore, to the extent it did "respond" to many of

the requests, the EEOC proceeded to make arguments or point to irrelevant facts without actually responding to the statements posed.

Pursuant to Rules 36(a) and 37(a)(4), defendant requested that the court find the EEOC's responses to be insufficient, that the court order the EEOC to respond to the admissions requests in conformity with the requirements of Rule 36(a), and that the EEOC be ordered to reimburse defendant for the costs of filing the instant motion. The court notes that the language of Rule 37(a)(4) is mandatory. Where a party has been found to have given evasive or incomplete response to a request for admissions, and has offered no plausible justification for doing so, the court "shall" impose sanctions, including attorney fees, upon the non-complying party. *Id.* Whether such circumstances exist is within the court's sound discretion. *See Bill Call Ford, Inc. v. Ford Motor Co.,* 48 F.3d 201, 209 (6th Cir.1995).

The need for the court to find that the EEOC's responses were insufficient, and to compel proper responses was obviated, however, by the EEOC altering 18 of the 19 objectionable responses in its response to defendant's motion. Defendant's sanctions motion, then, was clearly the precipitating cause of the EEOC's amended responses to defendant's request for admissions. The EEOC's response brief made no attempt to justify the original responses under the criteria set forth in Rules 36(a) or 37(a)(4); instead, the EEOC simply noted that it had altered its responses and moved that defendant's sanctions motion be denied.

The court is not impressed with the EEOC's argument. Rule 36(a) makes abundantly clear a party's obligations when responding to a request for admissions. The EEOC's responses were so patently unjustified that it did not even attempt to defend them in its response to the sanctions motion. When a party has offered no explanation for its prior discovery responses and changes its responses due to the filing of a sanctions motion, Rule 37 sanctions are appropriate. *See, e.g., Itar–Tass Russian News Agency v. Russian Kurier, Inc.,* 1996 WL 267969 at *2 (S.D.N.Y. May 21, 1996) (unpublished opinion). Hence, the court need not engage in a point-by-point reiteration of the EEOC's sanctionable responses, which are amply set forth in defendant's brief. The EEOC's revisions—without explanation—constitutes a *de facto* admission of its error.

Moreover, had the court been forced to rule on defendant's motion, there is no doubt that the EEOC's responses would have been deemed insufficient, and that the court would have ordered the EEOC to respond to the request in a direct, complete, and truthful manner. The statements proffered by defendant in its request for admissions were not complex. They were single-issue, factual statements derived almost verbatim from uncontrovereted deposition testimony. The EEOC had approximately five months from its own internal investigation, and virtually another six months of official discovery—including the depositions of apparently all relevant witnesses—to become acquainted with the facts of the case. The EEOC has offered no explanation for its actions, and the court views them as obfuscatory.[1] It was

---

1. The EEOC's *amended* response to Request No. 20 is exemplary of the EEOC's consistent efforts to avoid responding to the statements posed by "spinning" its denials. No. 20 stated: "Nobody at Burger King told Sgt. Shell or Det. Tuma who to name as suspects." The EEOC denied this. In other words, the EEOC asserted that Burger King *did* tell Sgt. Shell whom to name. It is undisputed that Sgt. Shell listed Ms. Galloway and Ms. Thom-

as as "suspects" on his police report, and that no Burger King employee told the police who to place on that report. The EEOC supported its denial of this request on the ground that Assistant Manager Langolis testified that she may have pointed out the two women as potential suspects to Sgt. Shell. The EEOC doubly misses the point. First, Burger King (through Assistant Manager Langolis) is a separate entity from the police. That a Burger

only by defendant's filing of the sanctions motion that the EEOC did what it should have done to begin with without prompting, namely, admit to the statements or provide fact-based explanations of why it could not. *See id.; C.f. H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.,* 536 F.2d 1115, 1126 (6th Cir.1976) (Rule 37 expenses justified "when a party subjects an opposing party to the expense of litigating the propriety of discovery"). Accordingly, defendant is entitled to the full measure of its costs in preparing and filing the sanctions motion.

### III. Costs, Attorney Fees & Sanctions on the Merits of the Case

■ In *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Supreme Court held that:

[a] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.

In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.

. . . . .

Hence, a plaintiff should not be assessed his opponent's attorney fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate it after it clearly became so.

*Id.* at 421–22, 98 S.Ct. 694. This standard for awarding defendant's attorney fees in Title VII cases closely approximates the standard for awarding Rule 11 sanctions—

namely, when the attorney or party's conduct was unreasonable under the circumstances. *See Ridder v. City of Springfield,* 109 F.3d 288, 293 (6th Cir.1997); *see also Business Guides, Inc. v. Chromatic Communications Enter., Inc.,* 498 U.S. 533, 548, 551, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991) (sanctions appropriate where "complaint was neither well grounded in fact nor warranted by existing law"). Accordingly, the court will employ the same analysis under Rule 11 as under Title VII in evaluating defendant's claims for attorney fees, costs, and sanctions.

"Objective reasonableness" requires an attorney to:

undergo a reasonable inquiry into both the factual and legal predicates of the complaint, prior to its filing. Relevant factors for determining whether the reasonable inquiry test has been met ... include the time available to the signor for investigation; whether the signor had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law ... [ ]

*Rodriguez v. Credit Bureau of Ypsilanti,* 14 F.3d 602 (Table), 1993 WL 535174 at *2 (6th Cir. Dec.27, 1993) (unpublished opinion), (citing *Davis v. Crush,* 862 F.2d 84, 88 (6th Cir.1988)) (internal citations and quotations omitted).

As noted in Part II of this order, the EEOC has extraordinary pre-litigation discovery powers that are not available to ordinary litigants. In this case, it had more than five months to review documents and interview witnesses—including the investigating police officers—before filing suit on August 25, 1998. Although the court will not reiterate the findings of its August 31, 1999 "Order Granting Sum-

King employee may have informed the police who she suspected is a different issue than who the police determine to be suspects. Second, the Request is framed in prescriptive, not suggestive terms. Offering up potential

suspects is different than dictating who they are. The request for admissions addresses the latter, while the EEOC chose to respond to a non-existent statement asserting the former.

mary Judgment," it notes that the basic facts of this case are as any reasonable person would expect them to be: Restaurant managers believe that one or more of their employees may have participated in an on-site larceny. The managers call the police to investigate, and (along with all of the other employees) respond to the police's questions asked during the course of that investigation. Based on the information collected, the police classify two of the employees as primary suspects, and take them to the police station for voluntary fingerprinting. In light of the police's preliminary actions, the managers suspend the two employees until the investigation is complete. Management also decides to terminate one of the two employees, based on credible information received from another employee that the first employee violated a significant company policy. After an inconclusive police investigation, the second employee is invited to return to work two weeks after the incident, but elects not to return.

As it happened, the two employees initially suspected by the police were black. Based on that fact, and nothing more, the EEOC initiated a discrimination lawsuit against the defendant. The information it garnered in its internal investigation was clear and uncomplicated. The EEOC's

complaint, though, falsely alleged that the defendant had "accused" the two employees of theft, and falsely alleged that the defendant had discharged the second employee who had actually elected not to return to work. See Pl.Amend.Comp. at "Nature of the Action" and ¶ 8. Incredibly, despite the EEOC's concession in its March 30, 1999 response to the first sanctions motion that no such accusations were actually leveled by Burger King management, see Pl.Resp. to Sanc. at 1, and despite the court's August, 1999 finding in summary judgment that those facts are undisputed, the EEOC once again leveled that false charge in its October 7, 1999 response to defendant's motion for costs, fees, etc.: ". . . Galloway and Thomas were the only workers *accused* of theft by the Burger King's management." See Pl. Costs & Fees. Resp. at 8 (emphasis added).

As if that were not boggling enough, the EEOC further asserted—and continues to assert—that the lack of accusations and termination are "minor details." See Pl. Resp. to Sanc. at 1.[2] After defendant Sacco pointed out the patent falsity of the EEOC's accusations in the complaint, the EEOC responded not by dismissing the suit, but by giving its discrimination theory a new, and more amorphous, varnish:

2. It is apparent to the court that the EEOC, in briefing, has made a veiled but sophomoric attempt to "spin" the facts surrounding the discovery of a large quantity of money under Galloway and Thomas's work counter, an event that figured importantly in focusing police suspicion upon them. In its "Response to Motion for Rule 11 Sanctions," the EEOC cryptically implied doubt about manager Peters finding the money by writing this: *"Interestingly,* while Sgt. Shell was still at Burger King, *'unclaimed money'* was found. . . ." See Pl.Resp. to Sanc. at 3 (emphasis added). In a similar vein, the EEOC enquoted the phrase describing funds located by manager Peters, calling it "the *'missing money,'* " as though it were not in fact missing. See Pl.Resp. to Sanc. at 9 (emphasis added). It may be (and the court can think of no other explanation) that the EEOC attorney who authored these responses harbors a suspicion that "the 'missing money' " was not really missing, and that

the manager's "interesting" discovery of "the 'missing money' " was a mere ploy based on racial animus, a quickly-hatched conspiracy to cast Galloway and Thomas in a bad light with the police and designed to permit Burger King to be rid of these African–American employees. If this be the Commission's theory, the preferred practice is to simply lay it out plainly for all to see, and to avoid dancing around with mysterious quotation marks and modifiers such as "interestingly." Of course, there are disadvantages to plainly laying out such a theory: First, there is absolutely no evidence upon which counsel could rely in support of it. Second, such a conspiracy theory would be revealed as witless because defendant had no need to fabricate a reason to be rid of Galloway and Thomas. Both women were employed at will, and could have been terminated at any time, without any reason.

[T]he defendant nevertheless terminated Galloway and indefinitely suspended Thomas because the defendant suspected them, the only African–American females working for defendant, of taking money. The Commission further contends that the Defendant's position that it terminated Galloway for violation of cash policy was a pretext for discrimination; and that the defendant's disparate treatment of Thomas during the police investigation, including but not limited to the suspension of her employment, was discriminatory based on her race.

*Id.* at 2.

At no point did the EEOC ever have before it *evidence* of discrimination. Upon Ms. Galloway's and Ms. Thomas's initial filing of discrimination charges with the Michigan Department of Civil Rights, the EEOC had in hand *accusations* of discrimination by members of a *protected class.* Despite taking more than five months to conduct a thorough investigation of the charges, and despite there being not a shred of evidence of racial animus, disparate treatment, or unjustified adverse employment action, the EEOC initiated formal legal action against the defendant. At no time did the EEOC have anything more to support its lawsuit than accusations by the two women.

That a governmental agency would file a lawsuit under such circumstances is astonishing. The EEOC is granted broad administrative authority to conduct extensive pre-litigation discovery precisely so that it can ably determine how the agency's resources can best be utilized to fight the scourge of unlawful discrimination. After conducting the administrative investigation, the EEOC has multiple options: It can refrain from taking further action; it can attempt an informal settlement through conciliation; and it can institute formal legal proceedings where there exists credible evidence that discrimination

has occurred that cannot be remedied by less onerous methods. Here, there was but one reasonable course of action for the EEOC to take upon the completion of its initial investigation, and that was to dismiss Ms. Galloway's and Ms. Thomas's discrimination charges as without support, and to drop the matter against defendant Sacco. *See, e.g., EEOC v. Bellemar Parts Indus., Inc.,* 868 F.2d 199, 200 (6th Cir. 1989) (attorney fees for defendant warranted in discrimination action by EEOC "which was clearly groundless, at least by the time the action was filed in district court," where "the EEOC did not bother to properly consider the facts presented to it before forging ahead and hailing [the defendant] into court").

The court is dismayed by the wholly unjustified wielding of prosecutorial power in this case. No fewer than five attorneys' names are on the briefs submitted to the court, ranging from the trial attorney to the EEOC General Counsel. That a complaint would be filed in the name of these attorneys under these circumstances—and continued to be prosecuted despite defendant's counsel's repeated efforts to inform the EEOC of the countless factual and legal errors in the Commission's theory of the case—appears to illustrate a profound failure in the agency's chain of command.[3] As the Sixth Circuit pointed out in admonishing the EEOC for a similarly frivolous lawsuit:

> The United States and its agencies with superior time, money, and manpower should not be able to subject defendants, even corporate defendants, to unnecessary and wasteful depletion of resources in order to pursue an untenable position.
>
> .　　.　　.　　.　　.
>
> The United States, it should also be pointed out, has an obligation to its citizens not to subject them to unnecessary litigation.

---

**3.** Based upon the prosecution of this baseless case, several agency attorneys appear to be in need of close professional supervision. The court will direct the attorneys of record to make this more widely known in Part IV. of this order.

*EEOC v. Detroit–Macomb Hosp. Corp.,* 952 F.2d 403 (Table), 1992 WL 6099 at *5 (6th Cir. Jan.27, 1992) (unpublished opinion). In addition to the initial frivolous filing and the defendant's counsel's repeated informal attempts to persuade the EEOC to dismiss the suit, defendant's counsel also formally notified the EEOC in a February 5, 1999 letter of the factual and legal unsustainability of its case, and requested yet again that the suit be dismissed. Notwithstanding the gaping flaws in its case, the EEOC continued to prosecute it. Such actions are *per se* unreasonable, and entitle defendant to all of its reasonable costs and fees. *See, e.g., Dabbs v. Bolin,* 21 F.3d 427 (Table), 1994 WL 95928 at *3 (6th Cir. March 23, 1994) (unpublished opinion); *Detroit–Macomb Hosp.,* 1992 WL 6099 at *4–5; *compare EEOC v. Shoney's Inc.,* 28 F.3d 1213 (Table), 1994 WL 325995 at *1–6 (6th Cir. July 5, 1994) (unpublished opinion) (defendant's attorney fees not warranted where EEOC acted properly by voluntarily dismissing complaint once discovery demonstrated no evidentiary support for discrimination claim).

■ In a related vein, the EEOC's assertions that defendant needlessly increased its costs by hiring out-of town counsel and overlitigating this case are unworthy of any sympathy. As the Supreme Court has noted:

> [M]any defendants in Title VII claims are small- and moderate size employers for whom the expense of defending even a frivolous claim may become a strong disincentive to the exercise of their legal rights ... [w]e find no grounds for applying a different general standard [for awarding defendant's attorney fees] whenever the Commission is the losing plaintiff.

*Christiansburg,* 434 U.S. at 422 n. 20, 98 S.Ct. 694. Defendant Sacco is in precisely such a situation; as a small business owner, he had to take out a loan to cover the costs of defending his business against this ill-begotten suit. *See* 9/20/99 Sacco Affidavit. It was only after the EEOC refused to reasonably conciliate the matter with defendant's less expensive original local attorney, and instead indicated its intention to proceed with formal litigation, that defendant made a rational decision to hire more expensive and experienced attorneys to resist the full weight of the government's resources. After reviewing the costs and fees defendant incurred in this case, the court finds (with a minor exception) that they were eminently reasonable in light of the EEOC's actions. If the Commission does not use sound judgment before filing suit, or presses forward with a baseless suit after being notified of patent defects, the injured party should be made whole.

This case was one of the most unjustifiable lawsuits over which the undersigned judge has presided in the decade he has been on the federal bench.[4] All the more unfortunate is the fact that the plaintiff was a federal agency, with undeniably important congressionally-mandated responsibilities. Such a waste of precious taxpayer resources where no legal wrong has been done by the targeted defendant is inexcusable. Under the circumstances, the EEOC's actions were an abuse of power, and this lawsuit, unremittingly prosecuted by agency attorneys, represents a flagrant disregard of the facts and law. It is the court's hope that such actions will not be repeated.

## IV. The Costs, Fees, and Sanctions to be Imposed

■ Defendant has requested that the court award it $59,511.73 in costs and fees. Upon reviewing defendant's submission of incurred costs and fees, the court finds that all of the claimed costs are reasonable and justified, with the minor exception of ten hours of deposition attendances by Attorney Hiser on 12/29/98 and 1/20/99 when

---

4. This observation applies only to attorney-managed cases; several lawsuits pressed by *pro se* litigants come to mind as somewhat more egregiously baseless than this one.

Attorney Vercruysse was actually taking and defending the depositions. While it certainly may be useful for other attorneys staffing a case to sit in on a deposition, as a general matter, an opposing party should only be charged for the cost of the essential participating attorney. Accordingly, the court will disallow $1,370.00 of the attorney fees claimed by defendant Sacco.

The court also finds that 13.25 hours and 10.5 hours are fairly attributable to Attorneys Hiser and Hirsh, respectively, for work incurred as a result of the EEOC's violations of Fed.R.Civ.P. 37 in its "Objections and Answers to Defendant's Request for Admissions." The total value of the time those attorneys spent was $2,957.50, and plaintiff will be liable for interest[5] on that amount accruing as of February 25, 1999, the date the EEOC submitted its non-compliant "Objections and Answers to Defendant's Request for Admissions." Although this amount is included in defendant's total request, the court is awarding it separately because it is the result of a distinct sanction, and so that interest may be awarded from the date of the sanctionable conduct.

Furthermore, subtracting the foregoing amounts from defendant Sacco's claimed total costs and fees of $59,511.73, plaintiff will be liable for $55,184.23, with interest accruing as of August 31, 1999, the date summary judgment was entered for defendant Sacco.

Finally, in furtherance of Rule 11's primary objective of deterrence and the court's goal of persuading the EEOC and its attorneys to not pursue similar baseless actions in the future, the court focuses on the following attorneys, each of whose names appears prominently on the pleadings mentioned in this opinion, and each of whom accordingly bears some measure of responsibility for the continued prosecution of this case, although the court has no way to determine which attorney is responsible in what measure for any origination or review of this prosecution. Each of the named attorneys will be required to circulate copies of this order and the court's August 31, 1999 summary judgment order to each of their immediate superiors, and to all of their fellow attorneys in their respective offices:

Ellen Ha, Trial Attorney

David Ingram, Supervisory Trial Attorney

Adele Rapport, Regional Attorney

Gwendolyn Young Reams, Deputy General Counsel

C. Gregory Stewart, General Counsel

*See, e.g., Huettig & Schromm, Inc. v. Landscape Contractors Council,* 582 F.Supp. 1519, 1522–23 (N.D.Cal.1984), *aff'd,* 790 F.2d 1421 (9th Cir.1986). Each of the aforementioned attorneys will be required to file a certificate with the court under oath that this requirement was met. Further, because the court is uncertain about the supervision, if any, of the Commission's General Counsel, C. Gregory Stewart will be ordered to provide a copy of this order and the court's August 31, 1999 summary judgment order to each sitting member of the EEOC, and to file a certificate with the court under oath that this requirement was met.

### V. Conclusion

For the foregoing reasons,

IT IS ORDERED that defendant's "Motion to Determine the Sufficiency of Plaintiff's Objections & Answers to Defendant's Request for Admissions & for Sanctions," and its "Motion for Rule 11 Sanctions" are GRANTED.

IT IS FURTHER ORDERED that defendant's "Application for Costs, Fees, & Expenses Pursuant to 28 U.S.C. § 2412 and in Support of Its Motion for Sanctions" is converted by consent of the parties to an application brought under 42 U.S.C. § 2000e–5(k) and is GRANTED.

IT IS FURTHER ORDERED that plaintiff PAY defendant $2,957.50 as well

---

5. The court encourages the parties to agree upon an acceptable rate of interest.

as interest on that amount accruing from February 25, 1999, not later than August 31, 2000.

IT IS FURTHER ORDERED that plaintiff PAY defendant $55,184.23, with interest accruing on that amount from August 31, 1999, not later than August 31, 2000.

Finally, IT IS ORDERED that plaintiff's Attorneys Ellen Ha, David Ingram, Adele Rapport, Gwendolyn Reams, and C. Gregory Stewart shall CIRCULATE copies of this order and the court's August 31, 1999 summary judgement order to each of their immediate superiors and to all other attorneys assigned to their respective offices, and that C. Gregory Stewart is ORDERED to PROVIDE a copy of this order and the court's August 31, 1999 summary judgment order to each sitting member of the EEOC, accompanied by a memorandum or equivalent statement that the court has directed him to inform the Commissioners that each is encouraged to read the opinions; each attorney is ORDERED to CERTIFY UNDER OATH and in WRITING to the court that this requirement was met not later than August 31, 2000.